Argued and submitted April 30, affirmed December 5, 1984

STATE OF OREGON,
*Respondent,*

*v.*

ERNESTO SCHOOP RITTER,
*Appellant.*

(C 82-10-37942; CA A28652)

692 P2d 158

Robert M. Leen, Hollywood, Florida, argued the cause for appellant. With him on the brief were Gregory C. Bennett and Bennett, Londahl & McCandlish, Portland.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

## BUTTLER, P. J.

Defendant appeals his conviction for delivery of a controlled substance, contending that the trial court erred in refusing to suppress certain evidence seized pursuant to a warrantless entry of his hotel room. Because we conclude that the entry was based on probable cause and justified by exigent circumstances and practical necessity, we affirm.

On October 17, 1982, Officer Bunnell of the Multnomah County Sheriff's Department received information from a special agent of the Federal Drug Enforcement Administration that defendant was expected to arrive in Oregon by plane with a large quantity of cocaine sometime that week. Because no one knew when or where defendant would land, the sheriff's department maintained surveillance at both the Salem and Portland airports and at several hotels and motels in the Portland metropolitan area.

On October 23, 1982, at 1:30 p.m., a private twin engined aircraft, monitored by a FDEA patrol plane, landed at the Portland International Airport. Two men, one of whom was identified as defendant, disembarked, went to the terminal, rented a car, returned to the plane, unloaded baggage and drove to a motel. On arrival at the motel, at approximately 2 p.m., defendant's companion, later identified as Stenbock, secured two adjoining non-connecting rooms, numbered 764 and 766, while defendant waited by the elevator. Bunnell arrived shortly thereafter, conversed with an undercover officer and went to a room across the hall from rooms 764 and 766, rented for the purpose of surveillance. He was met there by other law enforcement personnel.

At approximately 3 p.m., Stenbock left his room, walked to the hotel garage and entered the rental car. Because the officers lacked the personnel for additional surveillance, and because they thought that Stenbock might leave with drugs in the car, they decided to apprehend him in the parking garage. On being notified that Stenbock had been placed in custody, Bunnell ordered the surveillance team to enter rooms 764 and 766 and to arrest defendant. Bunnell testified that he decided that an immediate entry of defendant's room was necessary to avoid the destruction of evidence and because of the "possibility of blowing our investigation." According to

Bunnell, the endangered investigation included the identification of confederates, the making of appropriate arrests and the discovery of what precisely defendants were doing in Portland. Because of the construction of the motel, the officers could not hear inside defendant's soundproof motel room and thus did not know what he was doing. Bunnell was concerned that "there was some code if Mr. Stenbock didn't reply to Mr. Ritter in a certain length of time that he [defendant] would know something was wrong." Bunnell feared that, if tipped off, defendant would dispose of the cocaine by flushing it down the toilet or the bathtub drain, or by throwing it out the window.

At 3:09 p.m., the officers entered defendant's room with a pass key and advised him that he was under arrest on an out-of-state warrant.[1] Bunnell ordered defendant's room sealed and "frozen" and then returned to the surveillance room to complete an affidavit for a search warrant, which he had begun drafting on his arrival at the hotel. Approximately one hour and fifteen minutes after arresting defendant and "freezing" his room, the deputies obtained a telephonic search warrant for both hotel rooms, the rented vehicle and personal effects. Shortly thereafter, they found approximately 14.5 pounds of cocaine hidden in defendant's room above the drop ceiling in the bathroom and in defendant's luggage. Defendant was subsequently convicted of delivery of a controlled substance.

We turn first to a consideration of defendant's claims concerning the officers' initial, warrantless entry of his motel room. Defendant does not point to any direct, causal relationship between that police action and the subsequent seizure—pursuant to warrant—of the cocaine. On the other hand, the state does not contend that the officers' initial entry was irrelevant to the warranted search and seizure. Under these circumstances, we assume, without deciding, that the officers' initial entry is pertinent to the constitutionality of

---

[1] Because we conclude that the entry into defendant's motel room was based on probable cause and justified by exigent circumstances and practical necessity, we do not consider whether the Dade County, Florida, warrant, marked "will not extradite," provided a valid basis for entry into defendant's motel room to effect his arrest. The marking was not known to the officers until later. Accordingly, for the purposes of discussion, we refer to the entry as "warrantless."

the subsequent cocaine seizure, and we analyze the facts accordingly.

Because defendant does not contest the fact that the police had probable cause to believe that he possessed contraband, our inquiry is focused on whether there were exigent circumstances that obviated the necessity of obtaining a warrant to enter and search his room. The theory underlying the exigent circumstances exception to the warrant requirements of Article I, section 9, Oregon Constitution, and the Fourth Amendment to the United States Constitution is one of "practical necessity." *State v. Greene,* 285 Or 337, 342, 591 P2d 1362 (1979). In *State v. Peller,* 287 Or 255, 262, 598 P2d 684 (1979), the court discussed the justification for that exception:

> "* * * In certain cases, the societal interest in a warrantless search or seizure is simply believed to outweigh the interest in requiring prior judicial approval of such government action. Examples include cases involving danger to the lives of the arresting officers or others, *Warden v. Hayden,* [387 US 294, 87 S Ct 1642, 18 L Ed 2d 782 (1967)], cases where the delay attendant to issuance of a warrant would lead to destruction of evidence, *Schmerber v. California,* 384 US 757, 770-71,[86 S Ct 1826, 16 L Ed 2d 908] (1966); cases involving 'hot pursuit' by a police officer, *United States v. Santana,* 427 US 38,[96 S Ct 2406, 49 L Ed 2d 300] (1976); and an incredibly diverse number of others. *See generally, Dorman v. United States,* 435 F2d 385 (DC Cir 1970) (listing factors to be considered in determining whether 'exigent circumstances' or 'urgent need' are present); Note, 28 Syracuse L Rev 787, 802 n. 86 (1977)."

In the present case, the officers were reasonably concerned that the delay involved in obtaining a warrant might lead to the destruction of cocaine by the defendant. They had no way of knowing whether defendant would be aware of the fact that Stenbock had been apprehended, either because he could see that Stenbock had not driven away or because, by means of some prearranged signal, Stenbock had informed him that things were not going as planned.[2] Because

---

[2] Bunnell testified that, from his experience as a narcotics officer, he knew that

"* * * there seems to be [a] common M.O. of people engaged in drug traffic to have some sort of prearranged [signal], either by beeper, pay telephone, check-in spots, et cetera, just to make sure everything is going according to plan, whether there has been any alteration, hasn't been any interference by police officers."

defendant had several means whereby he could dispose of even a large quantity of cocaine, the officers' fears that he would do just that on notification of Stenbock's arrest were not unwarranted.[3]

■ Neither are we persuaded that the exigent circumstances here arose as a result of the officers' inaction. In contending that the state cannot claim exigent circumstances because the police had advance notice of his arrival and failed to obtain a warrant, defendant attempts to bring his case within the rule of *State v. Collicott,* 56 Or App 605, 642 P2d 1187, *rev den* 293 Or 190 (1982). There, however, we held that the exigent circumstances exception was inapplicable when the police had information at least two days before the search that drugs would be found at defendant's house, but failed to seek judicial authorization for the search. Here, in contrast, the police had no real opportunity to obtain a search warrant. Although they had probable cause to believe that defendant would arrive somewhere in the state and would be in possession of cocaine, they did not know when or where he would arrive, and thus could not describe the place or thing to be searched with any particularity. At the first reasonable opportunity, when defendant had settled into his room, the police began drafting an affidavit to support a search. The intervening departure of Stenbock interrupted that process. Because the police had probable cause to arrest defendant and to search his room, and because exigent circumstances developed before they could obtain a warrant, they were entitled to enter the room and, in effect, seize it pending the issuance of a search warrant. *See, generally, State v. Hansen,* 295 Or 78, 664 P2d 1095 (1983); *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983).

■■ Defendant also assigns error to the trial court's denial of his motion to controvert, contending that the affidavit in support of the search warrant contained inaccurate and misleading statements concerning the affiant's contact with an informant. In denying defendant's motion, the trial court

---

In fact, the officers later discovered that defendant possessed a pager from a Portland-based company.

[3] *See State v. Peller, supra* (where there was no *objective* basis for the officer's fear that defendant would make a break, there were no exigent circumstances justifying warrantless entry into defendant's home).

found that the affiant acted "in good faith" pursuant to ORS 133.693(2).[4] Although there was no specific finding that the affiant also passed the "accuracy and truthfulness" tests of that statute, the record supports such a finding. Because that finding is consistent with the court's ruling, we presume that it so found. *Ball v. Gladden,* 250 Or 485, 487, 443 P2d 621 (1968). There is evidence to support the court's findings, and they are binding on this court. *Ball v. Gladden, supra.*

■ Defendant finally contends that the trial court erred in sustaining the state's objections to nine defense questions on the ground that answers would tend to disclose the identity of a confidential informant. *See* OEC 510. Defendant contends that none of the questions asked called for disclosure of the informant's identity. We have reviewed the sealed testimony and conclude that the trial court properly sustained the state's objections.

Affirmed.

---

[4] ORS 133.693(2) provides:

"If the evidence sought to be suppressed was seized by authority of a search warrant, the moving party shall be allowed to contest the good faith, accuracy and truthfulness of the affiant as to the evidence presented before the issuing authority only upon supplementary motion, supported by affidavit, setting forth substantial basis for questioning such good faith, accuracy and truthfulness."