Argued and submitted July 20, affirmed December 21, 1988

STATE OF OREGON,
*Respondent,*

*v.*

GERALD HEIKKINEN,
*Appellant.*

(C87-04-32213; CA A46086)

765 P2d 1252

David E. Groom, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Riggs, Judges.

RICHARDSON, P. J.

Riggs, J., specially concurring.

## RICHARDSON, P. J.

Defendant appeals his conviction for manufacturing a controlled substance. ORS 475.992. He contends that the trial court erred in denying his pretrial motion to suppress evidence and his motion for judgment of acquittal. We affirm.

Two police officers, involved in an unrelated traffic stop, smelled an odor in the area, which they associated with methamphetamine production. As one of the officers was returning to his patrol car, he saw a woman running behind a house. Her clothes were in disarray, she was without shoes and appeared to be "high on something." The officers approached her, talked to her and, with her permission, searched her purse and found a syringe containing what appeared to be methamphetamine. She confirmed that it was methamphetamine. She said that she received the drug from a friend at her house and that she was under its influence. The officers then accompanied her to a nearby house, which she pointed out, to get her identification.

As the officers approached the house, the odor of methamphetamine production became stronger. The officers knocked on the door; defendant answered and identified himself as Raymond Robards. When he opened the door, the odor of methamphetamine production poured out of the house. Defendant denied knowing the woman who was with the officers and refused to consent to their entry into the house, because the owner was away. While they were talking with defendant, the officers heard a toilet being flushed continuously within the house.[1] They placed defendant under arrest and, fearing that evidence was being flushed down a toilet or that the methamphetamine lab might cause a fire or explosion, they entered the house. They arrested another person in a bathroom, then walked through the house to confirm that no one else was present. They secured the house so that no one could enter and obtained a search warrant by telephone. During the ensuing search, pursuant to the warrant, the officers seized incriminating evidence.

---

[1] At this point, a third officer reported to the officers talking with defendant that he could see a methamphetamine lab through a window in the back of the house. The state conceded at trial that the officer was trespassing, and it did not rely on that evidence. The trial court concluded that the information from the third officer had no bearing on the existence of probable cause.

Defendant's first assignment of error challenges the denial of his pretrial motion to suppress evidence found in the house. He contends that the trial court erroneously applied the exigent circumstances exception to justify the officer's warrantless entry.

■■ That exception applies if police are presented with both probable cause and exigent circumstances. *State v. Bridewell,* 306 Or 231, 235-36, 759 P2d 1054 (1988). In this case, the officers had probable cause to believe that the house contained an illegal drug laboratory. The information received from the woman and the strong odor of methamphetamine production in the neighborhood and emitted through the open door created a reasonable belief that a search would disclose evidence of a crime. *State v. Eacret,* 40 Or App 341, 344, 595 P2d 490, *rev den* 287 Or 409 (1979).

■ An exigent circumstance is a situation that requires immediate action to prevent imminent danger to life or serious damage to property, or to forestall a person's escape or the destruction of evidence. *State v. Girard,* 276 Or 511, 514, n 2, 555 P2d 445 (1976). The state argues,[2] and the trial court found, that exigent circumstances existed, because there was a strong likelihood that evidence was being flushed down a toilet and because of the possibility that the methamphetamine lab would cause a fire or an explosion or emit toxic fumes.

■ We held in *State v. Ritter,* 71 Or App 282, 287, 692 P2d 158 (1984), that the possibility that drugs were being flushed down a toilet presented a practical necessity to enter a hotel room to seize evidence. The facts presented a similar necessity here. The officers heard the toilet flush repeatedly as they were standing at the door, and they knew from experience that drugs were often destroyed by that technique. The officers' belief that they had to react quickly to prevent destruction of evidence and their limited act of securing the house and obtaining a warrant were reasonable under the circumstances.[3]

---

[2] The state has apparently abandoned its argument made below that defendant lacked a protectible interest under Article I, section 9, of the Oregon Constitution to contest the admissibility of evidence obtained from the house. *See State v. Tanner,* 304 Or 312, 316, 745 P2d 757 (1987).

■ Defendant next assigns error to the trial court's denial of his oral motion for judgment of acquittal made at the close of the state's case in chief. On the basis of the evidence discovered in the house and the circumstantial evidence, a rational jury could find the elements of the crime beyond a reasonable doubt. ORS 136.445; *State v. Arnold,* 90 Or App 596, 599, 752 P2d 1300, *rev den* 306 Or 661 (1988). The trial court properly denied defendant's motion.

Affirmed.

**RIGGS, J.,** specially concurring.

Although I agree with the lead opinion that the flushing sound heard by the investigating officers provided exigent circumstances justifying the subsequent warrantless search, I write separately to emphasize what I see as the greater exigency posed by the operation of this type of clandestine drug laboratory in a residential neighborhood.

"Exigent circumstances" include situations requiring swift action to avoid an imminent danger to life or serious damage to property. *State v. Girard,* 276 Or 511, 514 n 2, 555 P2d 445 (1976). The hazards to life and property posed by the operation of a methamphetamine laboratory were well known to the investigating officers in this case and have been extensively documented by other courts. *See, e.g., People v. Messina,* 165 Cal App 3d 937, 942-45, 212 Cal Rptr 75 (2d Dist 1985). Officer Bechard testified that the primary dangers from an operating methamphetamine laboratory are fire, explosion and the emission of extremely toxic fumes. He noted that these laboratories are often operated in an unscientific and unsanitary manner that contributes to the danger of fire or explosion. He stated that the effect of such a fire or explosion in the subject house "would probably be pretty devastating." These observations are in accord with those in *Messina:*

> "[I]t is abundantly clear that the types of chemicals used to manufacture methamphetamines are extremely hazardous to health. The Drug Enforcement Administration's Clandestine

---

[3] Because we hold that exigent circumstances arose from the possible destruction of evidence, we need not address the state's second claimed exigency that it was necessary to enter to prevent the laboratory from exploding or emitting toxic fumes.

Laboratory Guide indicates at pages 110-115 that the common chemicals used to synthesize methamphetamine include methylamine, mercuric chloride, and in some circumstances, metallic sodium, hydrochloric acid, and hydrogen. These chemicals can be highly dangerous and their presence in a residential neighborhood is absolutely beyond the pale of suggestion that they are safe." 165 Cal App 3d at 943.

That opinion contains an extensive review of National Fire Protection Association standards relating to the listed chemicals and concludes that "the chemicals normally used in the manufacture of methamphetamine are quite dangerous. * * * Beyond a shadow of a doubt, the presence of these chemicals in an unprofessional laboratory in a residential area constitutes an emergency which requires immediate and proper response by law enforcement." 165 Cal App 3d at 944.

The investigating officers in this case were confronted with an emergency situation requiring swift action to protect life and property. They were familiar with the smell associated with methamphetamine production and testified that, in their experience, only an operating methamphetamine laboratory could generate that smell powerfully enough to permeate an entire neighborhood. When the front door was opened by defendant, the smell of methamphetamine was overpowering. Bechard stated that "the odor dashed out like opening up an oven door when you're baking cookies * * *." Those observations not only suggested the presence of an illicit laboratory but also indicated that the laboratory was in operation, posing an imminent danger to persons and property in the surrounding neighborhood and to the occupants of the building concerned.

I would hold that the officers, independent of any flushing sounds heard from within the house, were confronted with exigent circumstances justifying immediate action to neutralize the threat posed by the operation of a clandestine drug laboratory and that evidence seized or observed under these facts is admissible. I do not believe that *State v. Bridewell,* 306 Or 231, 759 P2d 1054 (1988), would require suppression here, even in the absence of the exigent circumstances relied upon by the majority.