Argued and submitted July 30, reversed and remanded for
new trial September 22, reconsideration denied October 30,
petition for review allowed November 20, 1980

STATE OF OREGON,
*Respondent,*

*v.*

LARRY BYRON McMURPHY,
*Appellant.*

(No. C 79-02-30644, CA 15503)

616 P2d 1203

William Y. Sugahiro, Milwaukie, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James M. Brown, Attorney General, Walter L. Barrie, Solicitor General, and Robert C. Cannon, Assistant Attorney General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

ROBERTS, J.

## ROBERTS, J.

Defendant seeks reversal of his convictions for possession of a controlled substance (ORS 475.992), delivery of a controlled substance (ORS 475.992) and ex-convict in possession of a firearm (ORS 166.270). Defendant contends that the trial court erred in denying his motion to suppress evidence seized from the residence where he was arrested. We agree and reverse and remand.

On the evening of February 24, 1979, an undercover narcotics officer of the Portland Police Bureau met Jeffrey Woodward and Gary Gast at S.E. 39th and Holgate Streets in Portland to work out the details of a cocaine transaction. After some discussion, it became apparent that Woodward did not have the cocaine with him. The officer gave Woodward a quantity of marked bills and waited with Gast while Woodward went in a car driven by Michael Johnson to purchase one ounce of cocaine. The officer understood that he was to purchase five ounces in five separate transactions.

Approximately 45 minutes later, Woodward and Johnson returned. Woodward got into the car where Gast and the officer were waiting and Johnson went into a phone booth where the officer could see him making a call. The officer testified that he did not know who was being called.

The officer examined the substance tendered, and, satisfied that it was cocaine, gave a prearranged signal through a body microphone to officers in the immediate area who closed in and arrested the three suspects.

After the arrest, a second officer was approached by Johnson, who asked what he could do to "get out from underneath this beef." The officer interpreted this to mean that Johnson wished to know what he could do to receive favorable treatment. When asked what he had in mind, Johnson said he could take the officer to a place where the money was located, along with more cocaine and a person with a gun.

Johnson was able to name the person as Larry McMurphy. He was unable to give an exact address, but stated that the residence was on Southeast 113th Street, north of Holgate and was on the left as one traveled north. He stated that there was a small sports car in the driveway. An agreement was reached whereby Johnson was to direct the officer to the house in exchange for not being arrested.

Johnson then went with the officer in his car and specifically pointed out the house. There was a sports car parked in front. The officer decided to make an immediate entry because he understood that the purchase was to be of five ounces and, since only one had changed hands, he feared the occupants of the residence would become apprehensive when Woodward did not return. He was further concerned by Johnson's phone call because he had no idea who Johnson called.

Five or six officers who were in the area were requested to assist with the entry. The rear of the residence was secured and the officer went to the front door and knocked. A woman answered and the officer announced his identity and entered with drawn revolver along with two other officers.

The defendant and a woman were placed under arrest. A search of defendant's person revealed the marked bills. A quantity of cocaine in plain view was seized from an open shoulder bag where an officer had noticed it. A further search of the bag revealed more cocaine and a revolver.

Defendant was convicted on the subject charges following the denial of his motion to suppress. He contends that the officers lacked probable cause to make the entry because the informant was not shown to be reliable and because the facts did not provide a nexus between the delivery of the substance at S.E. 39th and Holgate and the defendant located at 4063 S.E. 113th Avenue. He further contends that, even if there were probable cause to believe that an occupant

was connected with the crime, there were no exigent circumstances justifying the entry.

The state, not having raised the issue at the suppression hearing, argues for the first time here that defendant lacks "standing" to challenge the validity of the search because he has not asserted any possessory interest in the cocaine, money, or firearm seized. In support of this argument, the state cites *Rakas v. Illinois,* 439 US 128, 99 S Ct 421, 58 L Ed 2d 387 (1978), *State v. Emery,* 41 Or App 35, 597 P2d 375 (1979), and *United States v. Salvucci,* 448 US 83, 100 S Ct 2547, 65 L Ed 2d 619 (1980).

In *Rakas,* the Supreme Court limited its former holding in *Jones v. United States,* 362 US 257, 80 S Ct 725, 4 L Ed 2d 697 (1960), wherein it had held that anyone "legitimately on the premises" could rely on the exclusionary rule. *Rakas* required that the disputed search and seizure infringe upon an interest of defendant which the Fourth Amendment is designed to protect.

In *United States v. Salvucci, supra,* and *Rawlings v. Kentucky,* 448 US 98, 100 S Ct 2556, 65 L Ed 2d 633 (1980), the Supreme Court made clear that the automatic standing rule of *Jones* was overruled and replaced by a requirement that the court ask "not merely whether the defendant had a possessory interest in the items seized, but whether he had an expectation of privacy in the area searched." 27 Cr L Rptr at 3244.

Those cases, however, all involved situations where defendant's Fourth Amendment interest had been challenged below. Apart from a passing reference to the fact that the woman who answered the door was the owner of the residence entered, the record in this case gives us no basis for a determination of whether defendant had a possessory interest in the property seized or a legitimate expectation of privacy in the area searched.

■ The state, having failed below to challenge defendant's right to contest the search and seizure,

cannot now be heard to complain about the record's failure to disclose such an interest. We see no reason to allow the state to take advantage of its own silence in this manner.

■ We turn now to the merits of defendant's argument. In order to justify a warrantless entry of a residence the state must demonstrate *both* probable cause to arrest and exigent circumstances justifying the entry. *State v. Olson,* 287 Or 157, 598 P2d 670 (1979); *State v. Peller,* 287 Or 255, 598 P2d 684 (1979); *State v. Parras,* 43 Or App 373, 602 P2d 1125 (1979), *rev den* (1980).

■ Assuming without deciding that there was probable cause to arrest in this case, we find that the state did not carry its burden of demonstrating that exigent circumstances required the entry.

In *State v. Rubert,* 46 Or App 843, 612 P2d 771 (1980), a case arising out of the same incident as that before us, we found that the state had demonstrated neither probable cause to arrest nor exigent circumstances justifying entry. The facts before us are more complete than those provided in *Rubert.*[1] However, the additional facts given do not change the conclusion in *Rubert* that

"* * * The sellers, after delivering the first ounce of cocaine to the police, were expected by the police to return to purchase additional amounts, but there is no evidence in the record that the persons in the house agreed to sell any additional amounts, that those in the house and those who sold the cocaine to the police had agreed upon any schedule of delivery or payment, or that those in the house were likely to become alarmed should a certain amount of time pass. Nor was there any evidence that those in the house were aware that the arrests had been made.

"The officers offered no estimate regarding the length of time necessary for them to obtain a warrant. They did not seek one, either by written affidavit or by oral statement. ORS 133.545(4). Without

---

[1] *Rubert* and this case were heard separately, and we have summarized the facts in each case as they were presented to us in each record.

any evidence of the length of time necessary to obtain a warrant or any explanation for not trying to obtain a warrant, we will not assume the officers could not obtain one within a reasonable time." 46 Or App at 847.

In this case, we know that Johnson spoke to someone on the phone prior to his arrest. We are not told that he observed the others being arrested while he was on the phone, nor given any reason to believe that he was even speaking to the persons at the residence. The officer testified that no procedure had been established for obtaining a telephonic warrant in Multnomah County, but did not indicate how long it would have taken to obtain a warrant under the normal procedures.

■     Speculation about what defendant might do if aware the crime had been reported is not sufficient to justify a warrantless entry of a residence. *State v. Parras, supra,* 43 Or App at 376; *State v. Peller, supra,* 287 Or at 264. The trial court erred in failing to suppress the evidence which was seized as a result of the entry.

Reversed and remanded for new trial.