Argued and submitted March 3, affirmed October 27, 1981

# STATE OF OREGON,
*Petitioner,*

*v.*

# LARRY BRYON McMURPHY,
*Respondent.*

(TC C79-02-30644, CA l5503, SC 27377)

635 P2d 372

William F. Gary, Deputy Solicitor General, Salem, argued the cause for petitioner. On the brief were James M. Brown, Attorney General, Walter L. Barrie, Solicitor General, and Robert C. Cannon, Assistant Attorney General.

William Y. Sugahiro, Milwaukie, argued the cause and filed a brief for respondent.

Before Denecke, Chief Justice, and Tongue, Lent, Linde, Peterson, and Tanzer, Justices.

LINDE, J.

## LINDE, J.

Defendant appealed his conviction of drug and weapons offenses, claiming that the circuit court should have suppressed evidence obtained by police officers as a result of a warrantless entry into a home. The Court of Appeals held that there were no exigent circumstances for the warrantless entry and remanded the case for a new trial. The prosecution contended for the first time on appeal that defendant had not shown the unlawful entry to have been an invasion of his own constitutionally protected rights, but the Court of Appeals held that his issue was raised too late. The court stated: "The state, having failed below to challenge defen dant's right to contest the search and seizure, cannot now be heard to complain about the record's failure to disclose such an interest. We see no reason to allow the state to take advantage of its own silence in this manner."

48 Or App 327, 616 P2d 1203 (1980). Having allowed the state's petition for review to consider the procedural burdens in suppression hearings, we affirm the decision.

The problem arises from the relationship between the constitutional prohibitions against warrantless or otherwise unreasonable searches and seizures, (Or Const Art I, § 9, US Const Amend IV), and the right of a defendant not to be convicted without due process of law.

■ The constitutional guarantees forbid officers to "violate the right of the people to be secure in their persons, houses, papers, and effects" whether or not any crime has been committed, any evidence is seized, or any prosecution or other government action ensues. They are a shield for people's rights generally, not a subdivision of criminal law. An entry or search that violates these guarantees is unlawful regardless whether it affects some defendant in a criminal prosecution. It may give rise to civil compensatory or preventive remedies. *See, e.g., Monroe v. Pape,* 365 US 167, 81 S Ct 473, 5 LEd2d 492 (1961), *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 US 388, 91 S Ct 1999, 29 LEd2d 619 (1971),[1] *Allee v. Medrano,* 416 US 802, 94 S Ct 2191, 40

---

[1] Indeed, the doctrine of punitive damages at common law originated in two famous cases of wrongful search and seizure, without need of a 4th amendment, *Wilkes v. Woods,* 98 Eng Rep 489 (C.P. 1763) and *Huckle v. Money,* 95 Eng Rep 768 (1763), although the latter plaintiff was jailed for only six hours and, as he admitted, confined "very civilly by treating him with beef-steaks and beer."

LEd2d 566 (1974), *Calvin v. Conlisk,* 520 F2d 1 (1975), *cf. Cornelius v. City of Ashland,* 12 Or App 181, 506 P2d 182 (1973).

■       The central issue litigated in a criminal prosecution, on the other hand, is the defendant's guilt or innocence, not some affirmative remedy to prevent or to compensate for unlawful official conduct. In seeking to suppress evidence, a defendant asserts that one step in the state's proceedings against him, the seizure of the challenged evidence, violated his rights, so that a conviction based on that evidence would not rest on due process of law. It has been pointed out that on a "prophylactic" or "deterrent" theory of excluding illegally seized evidence it should make no difference whose rights were invaded if the evidence resulted from the kind of unlawful procedure that exclusion is meant to deter. *See, e.g. Simmons v. United States,* 390 US 377, n. 12, 88 S Ct 967, 19 LEd2d 1247 (1968), citing sources. But the deterrent effect on future practices against others, though a desired consequence, is not the constitutional basis for respecting the rights of a defendant against whom the state proposes to use evidence already seized. In demanding a trial without such evidence, the defendant invokes rights personal to himself.[2]

■       This, at least, is the rule in the federal courts. *See United States v. Salvucci,* 448 US 83, 100 S Ct 2547, 65 LEd2d 619 (1980), tracing its antecedents. It is often mislabeled as a rule of "standing," although of course a defendant always has standing to object to a court's ruling on the admission of evidence against him. More accurately, the defendant's claim for suppression fails on the merits if his rights were not violated in the state's acquisition of the

---

[2] The point is sometimes stated as a distinction between the direct "regulatory force of the constitutional guarantees and their "atomistic" application in suppression evidence in individual cases. *See* Kuhns, *The Concept of Personal Aggrievement in Fourth Amendment Standing Cases,* 65 Iowa L Rev 493 (1980), adopting the terms used in Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn L Rev 349 (1974). *See also* Bacigal, *Some Observations and Proposals on the Nature of the Fourth Amendment,* 46 Geo Wash L Rev 529 (1978). A recent illustration is *State v. Holt,* 291 Or 343, 630 P2d 854 (1981), distinguishing between unconstitutionality of the challenged police surveillance and availability of exclusion to a defendant charged with public indecency who was found to have abandoned his personal expectation of privacy. *See also State v. Greene,* 285 Or 337, 351-353, 591 P2d 1362 (1979) (concurring opinion).

evidence. *See Rakas v. Illinois,* 439 US 128, 134, 99 S Ct 421, 58 LEd2d 387 (1978). The state's petition "assumes" adherence to that rule in his state, and the defendant has not questioned it.[3]

■ The parties disagree on a narrower question concerning the procedure for deciding whether a search or seizure by which the state acquired the evidence was itself an invasion of defendant's rights, antecedent to the use of the evidence against him. Within constitutional limits, procedure in a state court, of course, is a matter of state law.[4] As a practical matter this question should not arise when a person is searched incident to a valid arrest or when a warrant or the supporting affidavit identifies the defen dant with the place to be searched or the property to be seized. It arises when evidence improperly seized in a building, a vehicle, or a container is offered against someone whose legally protected interest in the place searched or the property seized is not selfevident. In the present case, for instance, the evidence was seized after a warrantless entry into a residence in which defendant was present.

The procedural disagreement, however, is not squarely presented by this record. The record is sparse on the question of defendant's protected privacy or other interest in the invaded residence. In testifying to the location of that residence, which had been described to the police in part by the presence of a sports car in the driveway, defendant was asked whether any other sports cars were regularly in the area. He replied that "there's a 280-Z that parks right across the street from the house that I live in."

---

[3] *Compare State v. Carter/Dawson,* 287 Or 479, 600 P2d 853 (1979) (suppressing evidence against passenger as well as against driver of automobile).

[4] *Rawlings v. Kentucky,* 448 US 98, 100 S Ct 2556, 65 LEd2d 633 (1980) shows that the 14th amendment allows placing the burden of proof on the defendant, but of course it does not require a state to do so. ORS 133.693(4) provides:

"(4) Where the motion to suppress challenges evidence seized as the result of a warrantless search, the burden of proving by a preponderance of the evidence the validity of the search is on the prosecution."

*See State v. Matsen/Wilsen,* 287 Or 581, 607 P2d 784 (1979). The rule may be otherwise on motions to suppress evidence seized under a search warrant, *see State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). That question is not before us.

The circuit court inferred that there was a "warrantless intrusion into the home of the defendant."

■     The state made no issue of that inference in the circuit court. The Court of Appeals held that the state could not attack the inference for the first time on appeal. That holding was correct. The decision of the Court of Appeals is affirmed.

Affirmed.