STATE OF OREGON,
*Appellant,*

*v.*

DAVID LEE COURT,
*Respondent.*

(85-215; CA A36626)

726 P2d 1205

Jonathan H. Fussner, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

YOUNG, J.

Van Hoomissen, J., dissenting.

## YOUNG, J.

The state appeals a pretrial order granting defendant's motion to suppress evidence discovered by police while they were inside defendant's residence serving a warrant for the arrest of another person. The issue is whether there were exigent circumstances that excused the police from obtaining a search warrant. We affirm.

In November, 1984, parole officer Glynn was assigned to supervise John Phillips, who was on temporary leave from the state penitentiary, where he had been serving sentences for forgery and failure to appear. While under Glynn's supervision, Phillips was authorized to live in a trailer with Diane Court, defendant's wife.[1] The trailer was parked in a sparsely populated area about a third of a mile off a main highway. Mr. and Mrs. Schoenecker, Diane Court's parents, and their three sons lived nearby in a second trailer on the same property. The nearest other residence was about 150 yards away. There was a telephone in the Schoeneckers' trailer, but not in defendant's trailer.

Phillips failed to report to Glynn and to respond to Glynn's repeated demands that he report. On January 11, 1985, Glynn obtained an arrest warrant for Phillips on a charge of escape. ORS 162.165. On January 17, Mary Court, defendant's sister, who also lived in the trailer with defendant, his wife and Phillips, called the police and told them that Phillips would be at the trailer the following morning.

On January 18, troopers Corson and Rutledge went to the property to arrest Phillips on the January 11 warrant. They parked their vehicle between the trailers, with defendant's trailer to the right, or east. Rutledge positioned himself between the trailers "for the purpose of securing the back side of the premises in case there was an escape attempt from inside [defendant's trailer]." Corson went to the Schoeneckers' trailer and talked to Mr. Schoenecker. He told Schoenecker that he had a warrant for Phillips' arrest. Schoenecker told him that Phillips lived in defendant's trailer. Corson walked to the trailer and knocked on the door. No one answered. Corson returned to Schoenecker's trailer

---

[1] The trailer is described as "a double-wide mobile home."

and asked him for assistance in getting "somebody from inside the [defendant's] trailer." Together they walked to the trailer, where Schoenecker opened a sliding glass door and went inside. Corson waited outside on the porch. A moment later, Schoenecker returned to the door with defendant and then went to his own trailer.

Corson entered defendant's trailer through the open door. He showed his badge and identification to defendant and told him that he was there to arrest Phillips. Defendant denied knowing Phillips. He told Corson that no one else was in the trailer. However, Corson could see a woman, later identified as Gloria Freeman, in the living room. Freeman first told Corson that Phillips had left the trailer earlier in the morning, but then she denied even knowing him. At Corson's request, Freeman opened the trailer's side door and Rutledge entered. After receiving conflicting answers from defendant and Freeman, Corson searched the trailer. He found Phillips in a bedroom attempting to hide. Defendant was later indicted for hindering prosecution by harboring and concealing Phillips. ORS 162.325.

Defendant moved to suppress the "evidence"[2] on the ground that the warrantless search was unlawful. The trial court found that the escape charge was not a "grave offense," that there was no suspicion that Phillips was armed and that there was no strong likelihood that he would escape. The court concluded that, although Corson had probable cause to search defendant's trailer for Phillips, the state had not shown by a preponderance of the evidence that exigent circumstances justified searching it without a warrant and that, therefore, the search was unlawful.

■ In the absence of exigent circumstances, a search warrant is required for entering the home of a third party in order to arrest under an arrest warrant.[3] *Steagald v. United States,* 451 US 204, 101 S Ct 1642, 68 L Ed 2d 38 (1981);

---

[2] The only evidence seized by the police was Phillips—the person named in the arrest warrant.

[3] The state argues that a warrant was unnecessary, because the trailer was also Phillips' residence. However, the state concedes that that argument was not raised below; we therefore do not reach it.

*contra, State v. Jordan,* 288 Or 391, 402, 605 P2d 646 (1980).[4] The theory underlying the exigent circumstances concept is one of "practical necessity." *State v. Peller,* 287 Or 255, 262, 598 P2d 684 (1979). The state contends that there were exigent circumstances, because there was a possibility that Phillips would escape, and because obtaining a search warrant would have required leaving one officer to secure the trailer against Phillips' escape, a potentially dangerous situation.

■    We do not agree that the circumstances were sufficiently exigent to justify a warrantless search. In *State v. Girard,* 276 Or 511, 555 P2d 445 (1976), the court upheld a warrantless search, stating:

> "Here, the police officers, after knocking, heard the accused say, 'Hurry, they are coming.' Hearing this, it was reasonable for the officers to assume that the accused was hurrying to conceal evidence of the burglary or that he was about to escape. * * *
>
> "* * * * *
>
> "Defendant argued that the two officers could have 'surrounded' the house to avoid escape while they waited for reinforcements. That involves a large measure of speculation, depending upon a variety of factors relating to the feasibility of 'surrounding' the house or otherwise preventing escape, including the size of the house, the number of exits, the proximity of the house to cover for a person bent on escape, visibility, etc. In the exigencies of the moment, the officers could not reasonably be expected to put fine weights in the scale in weighing the chances of securing the house or of losing their quarry." 276 Or at 514.

In contrast, in *State v. Peller, supra,* the court suppressed evidence obtained as the result of a warrantless search:

> "The Court of Appeals focused upon [the above quoted language from *Girard* in the present case and concluded:
>
> " "* * * An officer is not required to stand around and wait for a defendant to choose which of several potential exits defendant may wish to use to "make a break". Exigent

---

[4] In *Jordan,* the court held that "[n]either the fourth amendment to the United States Constitution nor article I, section 9, of the Oregon Constitution requires that police officers also obtain a search warrant." 288 Or at 402. *Steagald* overrules *Jordan* as to the Fourth Amendment. Therefore, in this context, the Fourth Amendment provides *more* protection than does Article I, section 9.

circumstances arise when the possibility of "making a break" exists.' [37 Or App 467, 475, 587 P2d 510 (1979).]

"We agree that this is the correct rule when the officers have reason to believe that the defendant intends to 'make a break' as was the case in *Girard. We do not agree, however, that the mere possibility that defendant could make a break if he were so inclined gives rise to exigent circumstances when there is no indication that he is, in fact, so inclined.* Under the Court of Appeals' holding, a warrantless entry would be justified any time the police announced their presence and the defendant refused to come out of his home. The practical effect of this would be to all but eliminate the requirement that there be exigent circumstances in order to justify a warrantless entry to arrest.

"In the present case, unlike *Girard,* the police had no indication that defendant would attempt to 'make a break,' even if he could have done so. In *Girard,* the police had seen the defendant attempting to leave the house and had heard him say 'Hurry, they are coming,' when they demanded entry. In the present case, the defendant simply remained in his house and refused to respond to the police. Such actions are as consistent with an intent to remain in the house as they are with an intent to escape. Absent any indications that escape was imminent, the officers in the present case should have staked out the house and obtained a warrant before entering." 287 Or at 264. (Emphasis supplied.)

The state argues that Phillips' inclination to escape is shown by the escape charge. Accepting that argument would amount to a holding that a search warrant is never required when executing an arrest warrant on an escape charge. We decline to adopt such a rule. There is no evidence from which the officers could have inferred that Phillips was in fact attempting to escape. Thus, they should have obtained a warrant before entering.

■ The state argues that obtaining a search warrant would have required leaving one officer in a potentially dangerous situation. The record does not support that argument. First, Corson testified that, although he could not "get out" over regular police radio channels, he did get out over a different channel. Thus, he could have used the radio to obtain police backup units, which, according to Corson, were only 15 minutes away. Although Corson testified that going to the vehicle and radioing for assistance would not have been

"practical", because it would have left the east side of the trailer unsecured, it appears that the trial court did not accept that explanation. It is plain from the record that Rutledge could have secured the east side by walking from the northwest corner to the northeast corner of the trailer, while Corson was in the vehicle parked at the southwest corner. Second, there was a telephone in the Schoeneckers' trailer which might have been available to obtain assistance or a telephonic warrant.[5] *See* ORS 133.545(4); ORS 133.555(3). The fact that Corson had been "unsuccessful" in obtaining a telephonic warrant on one occasion does not excuse a failure to attempt to obtain one in this case. The state failed to prove that it would have been necessary to leave one officer in a potentially dangerous situation. The trial court did not err in granting the motion to suppress.

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

I respectfully dissent. I would hold that there were exigent circumstances that excused the police from obtaining a search warrant.

The evidence shows that Phillips was on temporary leave from the state penitentiary, where he had been serving sentences for forgery in the first degree and failure to appear in the first degree, both felonies.[1] He had failed to report to his parole officer, and had failed to respond to the parole officer's repeated demands that he report. An arrest warrant had been issued for him on a charge of escape in the first degree, a class B felony.[2]

The police had probable cause to believe that Phillips was in defendant's trailer. They were aware of the nature and gravity of Phillips' current offense and his prior conviction for failure to appear. Phillips was aware that a warrant had been

---

[5] The state suggests that using the Schoeneckers' telephone would have required "one officer to absent himself from watching defendant's trailer." We can find no evidence in the record to support that suggestion, and the state does not direct us to any.

[1] Corson testified that he knew why Phillips had been sentenced to the state penitentiary.

[2] The maximum term of imprisonment for a Class B felony is 10 years. ORS 161.605(2).

issued for his arrest and that the police were attempting to serve that warrant. The sparsely populated, rural area would have facilitated his escape. By concealing himself inside defendant's trailer, he effectively tried to escape the service of the arrest warrant. Although the police did not see Phillips running away from the trailer, it is unreasonable to suggest that they could not have reasonably inferred that he would *try*. Under the totality of the circumstances, it was perfectly reasonable for the police to infer that Phillips would attempt to escape.

The record does not support the majority's assertion that police backup units were only 15 minutes away. 81 Or App at 603. Corson testified that it would take backup units 15 minutes to arrive "if there had been any officers available." I find no evidence in the record on the question whether police backup was, in fact, available at the time.

The majority opinion is woolgathering when it asserts: "It is plain from the record that Rutledge could have secured the east side [of the trailer] by walking from the northwest corner to the northeast corner of the trailer, while Corson was in the vehicle parked at the southwest corner" and that "there was a telephone in Schoenecker's trailer which could have been used to obtain either assistance or a telephonic warrant." 81 Or App at 604. The only testimony in the record on those points is Corson's, and it is directly to the contrary. Further, even assuming that Corson could have used the Schoeneckers' telephone, a fact not in evidence, there is no evidence that Corson could have observed the area while inside the Schoeneckers' trailer. His testimony that that would leave Rutledge "in a dangerous situation" was unchallenged. State's exhibit 4, a diagram of the area, makes the majority's comments about what the police could have done little more than Monday morning quarterbacking.

Corson's entry was made peaceably. He walked through an open door. When he met defendant, he immediately identified himself. He showed his badge and identification, told defendant who he was and his purpose and authority. Accepting the trial court's findings of fact,[3] I conclude that

---

[3]The trial court's findings that escape in the first degree is not a "grave offense" and that there was no strong likelihood that Phillips would try to escape appear to me to be conclusions rather than findings of fact. If they are conclusions, they are not binding on this court. *State v. Warner*, 284 Or 147, 585 P2d 681 (1978).

the state has shown by a preponderance of the evidence that exigent circumstances justified searching defendant's trailer without a search warrant. I would hold that the trial court erred in granting defendant's motion to suppress.