Argued and submitted January 30, affirmed August 30, 1989

## STATE OF OREGON,
*Respondent,*

*v.*

## LEONARD ALLEN BROWN,
*Appellant.*

(10-88-00886; CA A48937)

778 P2d 976

Steven V. Humber, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Rives Kistler, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, Salem, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

NEWMAN, J.

**NEWMAN, J.**

Defendant appeals a conviction for unlawful possession of a controlled substance. ORS 475.992. He assigns as error that the court denied his motion under Article I, section 9, and the Fourth Amendment, to suppress evidence that the police seized without a warrant. We affirm.

At the suppression hearing, Officer Wells, whom the state called, and Jackson, whom defendant called, were the only witnesses. According to Wells, Eugene police learned that Simmons, a black man and an escaped penitentiary inmate, "had been seen in the area" of the Fantasyland Motel in Eugene "and possibly in" apartment unit 21 and was known to be armed. About 8:00 a.m., four uniformed police officers went to the motel without a warrant. They knew that unit 21 was rented to Jackson, although they did not know him. Two officers went to the front door of that unit, on the second floor of the motel; two went to the back of the motel. Wells knocked on the front door. Someone inside the motel unit opened a curtain and asked who was there. Wells responded, "Eugene Police Department." Someone inside the motel unit said, "Just a minute. I'll open up." Someone inside opened the door. Wells did not ask whether the person who had answered or the person who had opened the door was Jackson. Wells told the person that the police were looking for Simmons. Someone inside the room said, "He's not here [but] come in and look if you don't believe me." At that point, Wells was advised by radio from the officers at the back of the motel that a man who appeared to be Simmons was attempting to jump out of a window. Wells then entered. The other officer stayed at the front door.

Wells saw five persons, none black, in the front room, including a person who appeared to be asleep on the bed. That person was Jackson. Wells immediately proceeded to the bathroom in the rear of the unit and tried to enter it. Someone inside was holding the bathroom door closed. Wells believed that Simmons was in the bathroom. He shouted that, if the door was not opened, he would blow it open with a shot gun. The door was opened immediately.

Wells observed defendant, a black man, sitting on the toilet with his pants down. Wells believed that he was Simmons. He told defendant to put up his hands and not to flush

the toilet. Defendant got off the toilet but flushed it. Wells removed him from the bathroom and placed him in the custody of the other officer. Wells observed some green material and some small packages of white powder floating in the toilet bowl in plain view. He seized all of the material. The state and defendant have stipulated that the packages contained methamphetamine, and they form the basis of the charge. Wells saw two other persons in the shower area. Wells then asked Jackson, who had awakened, if the police could search the room. Jackson said yes.

Jackson testified that, because he was asleep, he was not aware of the entry of the police and he did not hear anyone give consent to the police officers to enter and that he would not have consented had be been asked. On cross-examination, Jackson testified that he had rented the motel room about three weeks before and that one other person had been staying there "a little bit off and on, but she hadn't been permanent at that time." He stated that he had been asleep about five hours when the officers came in and that he did not know who opened the door for the police or told them to come in. He stated that there were two other persons that he knew in the unit when he went to sleep, that he did not know how the five other people got in the unit, who let them in or what they were doing there, but that he knew two of them, including defendant. He testified that usually there were not a lot of people coming and going in and out of the unit and that it did seem unusual that there were at least six other people who had come into the room while he was asleep.

The trial court denied the motion to suppress, ruling that defendant had no privacy right that the state had violated when the police entered. Defendant asserts that the court erred, because the police lacked a warrant or consent to enter unit 21. The state responds that defendant was a trespasser and, therefore, had no privacy right that the state violated. It also argues that the police had consent and, in any event, had probable cause and exigent circumstances to enter and proceed into the bathroom and that they then saw the contraband in plain view in the toilet.

 ˙ We first consider Article I, section 9. Under *State v. Tanner*, 304 Or 312, 321, 745 P2d 757 (1987), there are two questions: (1) Did the police search of the motel unit violate

"the privacy of the [motel unit];" and (2), if it did, did that violation infringe a privacy right of defendant?[1] We hold that the search of the motel unit did not violate the privacy of the unit.[2] The police had learned that Simmons had been seen in the area of the motel and was possibly in unit 21. After the police had come to the front door, identified themselves, asked if Simmons was there and asked for consent to enter, they learned that a man who appeared to be Simmons was attempting to jump out the back window. Those facts created an exigency allowing the police to enter to search for Simmons, *see State v. Girard,* 276 Or 511, 514, 555 P2d 445 (1976), because there was a strong likelihood, not just a mere possibility, that the man who was trying to escape was Simmons. *See State v. Peller,* 287 Or 255, 264, 598 P2d 684 (1979); *see also State v. Heikkinen,* 94 Or App 472, 475, 765 P2d 1252 (1988). They also establish probable cause for the police to enter to search for Simmons. The same circumstances that justified the entry, together with what Wells observed when he entered the unit, justified him in proceeding to and entering the bathroom and ordering defendant to get up from the toilet. He then saw the contraband in plain view and was entitled to seize it. *See State v. Handran,* 97 Or App 546, 777 P2d 981 (1989).

The court did not err under the Fourth Amendment either.

Affirmed.

---

[1] In *Tanner,* the court stated:

"It is not correct, then, to say that a warrantless search of A's house violated section 9 *because* it violated A's privacy interests in the house. It would be more accurate to say that the search of A's house violated section 9 because it violated the privacy of *the house.* Given that the police have violated the privacy of the house, the question then arises whether that violation has infringed upon anyone's privacy interests. If the house proves to be abandoned, the police may have violated section 9 without violating anyone's section 9 rights." 304 Or at 321. (Emphasis in original.)

[2] Because of our disposition, we do not need to reach the question whether the police entry into the motel unit violated a privacy right of defendant.