## STATE OF OREGON,
### *Respondent,*

*v.*

## RANDALL NEAL WYNN,
### *Appellant.*

### (10-88-03921; CA A60476)

792 P2d 1234

Michael McGrady, Eugene, argued the cause and filed the brief for appellant.

Ann Kelley, Assistant Attorney General, Salem, argued the

cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

Rossman, J., dissenting.

## WARREN, J.

Defendant appeals his conviction for possession of a controlled substance. ORS 475.992. He assigns as error the denial of his motion to suppress evidence found after police arrested him in his home without a warrant.[1] We reverse.

We summarize the facts consistently with the trial court's findings. Steviann Ritter, defendant's former girlfriend, called the Cottage Grove Police Department at 7:15 a.m. to report that she had been kidnapped. The dispatcher broadcast the report over the police radio, naming defendant as the suspect. Officers Mudrick and Lorange responded to the call. Ritter told the officers that she had just escaped from defendant's house, where he was passed out after having taken methamphetamine the day before. She said that defendant kept some methamphetamine by his bed. Lorange left after about ten minutes, because Mudrick felt that Lorange was not needed. Mudrick drove to the station to get a camera and then drove back to Ritter's house to photograph her injuries and complete the interview. He returned to the station again and planned defendant's arrest with several officers for about 15 or 20 minutes. The officers went to defendant's home, entered and arrested him without a warrant at 8:57 a.m. After the arrest, they searched his bedroom and found marijuana and methamphetamine.

Mudrick had decided to arrest defendant after his initial interview with Ritter. He was concerned, however, that defendant knew the police were coming, because Mudrick had heard from another officer that defendant had said that he and his father listened to police broadcasts to gather evidence for a harassment action. Mudrick knew also that defendant intended to move from the house at which he was staying and had already moved most of his belongings. Mudrick testified that he had never heard of a telephonic warrant and had thought that it would take five hours to get a warrant.

A deputy district attorney testified that a telephonic warrant could have been obtained in 45 minutes to an hour. He stated that an assistant district attorney is on call at all

---

[1] Defendant's only challenge to the search and seizure is that it was warrantless.

times to assist officers in getting warrants, and a district court judge is available at all times to issue warrants.

■　Exceptions to the warrant requirement are narrow, and the state has the burden of proving probable cause and that exigent circumstances exist that outweigh the strong interest in requiring a warrant. *State v. Peller,* 287 Or 255, 598 P2d 684 (1979); ORS 133.693(4). One relevant consideration is whether the police attempted to get a telephonic warrant, and it is no excuse that police are unfamiliar with the procedure. *State v. Wise,* 305 Or 78, 82 n 3, 749 P2d 1179 (1988); *State v. Roberts,* 75 Or App 292, 706 P2d 564 (1985).

■　The state argues that a warrant was excused because of the danger that defendant would attempt to escape or destroy evidence when he heard his name mentioned over the radio. The mere possibility that a suspect may escape does not provide exigent circumstances; evidence must be presented that the suspect was, in fact, so inclined. *State v. Peller, supra,* 287 Or at 264; *State v. Court,* 81 Or App 598, 726 P2d 1205 (1986). In *State v. Girard,* 276 Or 511, 513, 555 P2d 445 (1976), for example, police saw the defendant leaving the house with several items and heard a voice say, "Hurry, they are coming" when they knocked on the door. That was held to permit a conclusion that exigent circumstance existed.

■　The trial court concluded that defendant was motivated to flee, because he was in the process of changing residences and because he probably had heard the dispatcher naming him as a suspect. Although we are bound by the trial court's findings of fact, we are not bound by the trial court's conclusion that those facts established exigent circumstances. *State v. Peller, supra,* 287 Or at 260. The fact that defendant was in the process of changing residences did not excuse the requirement of a warrant when there was no evidence that he was moving to escape capture. To the contrary, the trial court found that defendant was moving because the owner of the home had asked him to move out. If the officers were concerned that defendant would be gone before they could get a warrant, they could have watched the house for the time it would have taken to get the warrant. 287 Or at 265.

■　The trial court's finding that defendant probably had heard the dispatch is not supported by the record. The only

evidence on that question was the officer's testimony that, at some indefinite time in the past, defendant had said he and his father listened to police broadcasts to prepare for a harassment action. The state presented no evidence of when defendant made that statement. When last seen by Ritter, shortly before she contacted the police, defendant was passed out. There is no indication that defendant was listening to a scanner or had a scanner nearby. At the most, the statement was some evidence that defendant could have heard the dispatch, but, standing alone, it did not make it *likely* that he had heard it. Speculation about what defendant might have done if he knew the crime had been reported does not establish exigent circumstances. *State v. McMurphy,* 48 Or App 327, 616 P2d 1203 (1980), *aff'd* 291 Or 782, 635 P2d 372 (1981).

Reversed and remanded for a new trial.

**ROSSMAN, J.,** dissenting.

I dissent. The majority's result hinges on the assumption that the trial court did not have sufficient evidence to find that defendant was motivated to flee. In my view, the record proves otherwise. Moreover, defendant did not challenge any of the trial court's findings. We should not conduct a treasure hunt for a reason to reverse his conviction.

Officer Mudrick decided to arrest defendant immediately, because he feared that defendant would flee or destroy drug evidence before a warrant could be obtained. Given the circumstances, those fears were patently reasonable. At the time of the arrest, Mudrick knew or had probable cause to believe that (1) defendant had just kidnapped Ritter, then passed out, allowing her to escape; (2) the dispatcher had just broadcast the report of the kidnapping on the radio, naming defendant as a suspect; (3) defendant and his father listened to police monitors so that they would know if they were mentioned in any dispatches; (4) defendant kept methamphetamine next to his bed; (5) defendant previously had assaulted police officers and shot someone with a firearm; and (6) defendant was in the process of moving. Given those facts, there was a strong possibility that, once awake, defendant would discover that Riddick had escaped, turn on his police scanner, and discover that he was a suspect. It stretches credulity to believe that an individual who previously had attacked police officers and was in the process of moving would simply

remain in his house until the police arrived to arrest him, leaving the methamphetamine next to his bed for them to discover.

The majority addresses that problem by deciding that "[t]he trial court's finding that defendant probably had heard the dispatch is not supported by the record," because "[t]here is no indication that defendant was listening to a scanner or had a scanner nearby." 102 Or App 1, 4-5. The evidence is to the contrary. Mudrick testified:

> "[Defendant] on occasion has mentioned to one other Cottage Grove police officer that *both he and his father monitor the police scanner constantly,* noting down the names and vehicles when they are ran [sic] in an attempt to put a harassment suit against the city." (Emphasis supplied.)

Obviously, if defendant monitored his scanner constantly, he kept it near him. Even if defendant happened to remain passed out long enough to miss the police report, his father was likely to tell him about it. The majority is simply wrong in concluding that Mudrick's testimony does not support a finding that defendant probably had heard or at any minute might hear the dispatch.

Finally, the majority reasons that "[i]f the officers were concerned that defendant would be gone before they could get a warrant, they could have watched the house for the time it would have taken to get a warrant." 102 Or App 1, 4. There are two difficulties with that analysis. First, as the Supreme Court noted in *State v. Girard,* 276 Or 511, 515, 555 P2d 445 (1976), such a conclusion

> "involves a large measure of speculation, depending upon a variety of factors relating to the feasibility of 'surrounding' the house or otherwise preventing escape * * *. In the exigencies of the moment, the officers could not reasonably be expected to put fine weights in the scale in weighing the chances of securing the house or of losing their quarry."

Second, even if the officers had watched the house, that would not have prevented defendant or the others who were inside it from destroying evidence of drug-related crimes. The officers clearly were justified in proceeding with the arrest as soon as they could plan it.

In sum, the existence of exigent circumstances is a

question of "practical necessity." *State v. Peller,* 287 Or 255, 262, 598 P2d 684 (1979). I believe that the majority has ignored the practical necessities faced by the officers in this case. In the process, it also has disregarded valid findings made by the trial court. Accordingly, I dissent.