Argued and submitted March 17, 2009, affirmed January 27, 2010

## STATE OF OREGON,
### *Plaintiff-Respondent,*

*v.*

## LAYNE EDWARD SANDERS,
### *Defendant-Appellant.*

Josephine County Circuit Court
05CR0655; A134938

226 P3d 82

David A. Hill argued the cause and filed the brief for appellant.

Susan G. Howe, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Ortega, Judge.

ORTEGA, J.

**ORTEGA, J.**

Defendant appeals his conviction for one count each of unlawful manufacture, delivery, and possession of the controlled substance methamphetamine, *former* ORS 475.992 (1995), *renumbered as* ORS 475.840 (2005). He assigns error to the trial court's denial of his motion to suppress evidence found in his residence, arguing that the warrantless entry that preceded the search was not justified by exigent circumstances. For the reasons explained below, we affirm.

■■ We review for errors of law, deferring to the trial court's findings of historical fact when there is sufficient evidence in the record to support those findings. *State v. Ehly*, 317 Or 66, 74-75, 854 P2d 421 (1993). In the absence of express findings, we presume that the trial court decided factual issues in a manner consistent with the ultimate conclusion that it reached. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). The following facts are either undisputed or identified as the trial court's findings and supported by constitutionally sufficient evidence. *Ehly*, 317 Or at 75.

Defendant rented a room in his home to Joe Villardo. Police suspected Villardo of drug crimes and of being a felon in possession of a firearm. Detective Jenista was investigating Villardo and was preparing an affidavit in support of a search warrant, relying in part on information from two confidential informants (CI-1 and CI-2).

On June 5, 2005, one of the informants, CI-2, informed Jenista that defendant was evicting Villardo from the house. Jenista scheduled a polygraph examination of CI-2 to support the search warrant. Three days later, the other informant, CI-1, who was scheduled for a polygraph examination at 8:30 a.m., arrived early at 8:00 a.m. and notified Jenista that Villardo was moving out that very morning. He also told Jenista that he had seen "significant steps toward [Villardo] moving out" and that he had observed methamphetamine, marijuana, and scales in Villardo's bedroom within the past 24 hours.

CI-1 had informed Jenista that surveillance cameras were located in the carport of defendant's house. Additionally, according to Jenista, most members of the drug community in the area could identify undercover officers and their vehicles; consequently, if officers staked out the house while waiting for a search warrant to be approved, then either Villardo or defendant could have been tipped off to their presence.

A search warrant affidavit was 80 to 90 percent complete when Jenista received the information regarding Villardo's immediate move, and Jenista estimated that it would have taken at least an additional one and one-half hours to complete the affidavit for the warrant and to obtain judicial approval, either in person or telephonically. Jenista feared that, if police waited another one and one-half hours to search the house, evidence would be lost. Villardo had a history of not updating his records following a move, and, if Villardo completed his move, he likely would take the evidence to an unknown location. If officers attempted to intercept Villardo in his car during the move, any evidence remaining at the house could potentially be destroyed during the delay for obtaining a warrant.

At least one officer drove by the house before 9:35 a.m. and did not observe any activity indicating that Villardo was moving. At 9:35 a.m., without a warrant, three officers approached and knocked on the door. The officers intended to enter and secure the premises, regardless of whether they received consent. Villardo quickly answered the door, fully dressed, and Jenista asked if they could enter to ask a few questions; Villardo stepped backward and allowed the officers to enter the doorway. It is unclear if Villardo gave a verbal consent.

Immediately after the officers had crossed the threshold, Villardo told the officers that the house was not his and that he did not think the owner would want them inside. Villardo then revoked any implied consent to the officers' entry and asked them to leave. The officers refused to leave and took control of the house.

Villardo became agitated. He made a movement toward his bedroom door and yelled toward defendant's bedroom for defendant to come out. Concerned about officer safety and the possible destruction of evidence, Jenista cleared the house. Officers knocked on defendant's bedroom door, woke him up, and escorted Villardo, defendant, and a third person outside. Defendant was not free to leave. Jenista informed him that if he did not give consent for officers to search, Jenista would apply for a search warrant and, during that time, defendant would not be free to enter his house. Initially, defendant twice refused to consent to a search, but when defendant learned that Villardo, in discussions with another officer outside, had given his written consent, defendant also gave written consent. During the search, evidence of drugs, drug paraphernalia, and scales were discovered in defendant's bedroom.

Defendant was charged with the unlawful manufacture, delivery, and possession of the controlled substance methamphetamine, *former* ORS 475.992, and moved to suppress the evidence on the ground that notification of Villardo's move did not create exigent circumstances to support a warrantless search of his house. Following a hearing on the matter, the trial court denied defendant's motion. The court concluded, first, that the officers had probable cause to arrest Villardo from the information provided by the two confidential informants, as set out in the incomplete affidavit for the search warrant, and, second, that the warrantless entry was justified by exigent circumstances. After a bench trial, defendant was convicted.

■    On appeal, defendant asserts that the state failed to establish that the search was necessary to prevent Villardo's escape or the destruction of evidence. In defendant's view, Villardo's move did not appear to be imminent, and the officers had enough time to obtain a warrant. Further, Villardo was not moving to escape capture, nor did anyone at the house have notice that he or she was under investigation. The state responds that the officers needed to act immediately while Villardo and his possessions were still present at the house and that officer surveillance of the house for the time required to obtain a warrant was not possible due to the

risk that defendant and Villardo would learn of their presence and would attempt to escape or destroy evidence.

We are called on to address whether exigent circumstances justified the warrantless entry of defendant's residence.[1] Defendant does not contest that officers had probable cause to arrest Villardo, and evidence supports the trial court's findings in that regard.

██ Article I, section 9, of the Oregon Constitution provides that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search[.]" The state must prove the validity of a warrantless search by a preponderance of the evidence. ORS 133.693(4). Warrantless entries and searches are *per se* unreasonable unless the state proves an exception to the warrant requirement, such as the existence of exigent circumstances when the officers have probable cause to arrest a suspect. *State v. Bridewell*, 306 Or 231, 235, 759 P2d 1054 (1988); *State v. Davis*, 295 Or 227, 237-38, 666 P2d 802 (1983). "An exigent circumstance is a situation that requires the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *State v. Kruse*, 220 Or App 38, 42, 184 P3d 1182 (2008) (quoting *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991) (internal quotation marks omitted)).

■ If the purpose of the warrantless search is to prevent destruction of evidence or escape by the suspect, the state must show that destruction or escape was imminent. *See, e.g., State v. Matsen/Wilson*, 287 Or 581, 587, 601 P2d 784 (1979); *State v. Brown*, 98 Or App 129, 133, 778 P2d 976 (1989). However, "[o]fficers need not exhaust every conceivable means, no matter how speculative, to avoid a claim that no exigency existed." *State v. Snow*, 337 Or 219, 225, 94 P3d 872 (2004). For example, in *State v. Girard*, 276 Or 511, 515,

---

[1] The search was not justified by consent: the trial court's findings indicate that officers took control of the house after Villardo revoked his initial implied consent for officers to enter and before obtaining written consent to search from both defendant and Villardo. Accordingly, the written consent was accomplished only after the warrantless entry and requires us to address whether the warrantless entry was justified. *State v. Hall*, 339 Or 7, 24-25, 115 P3d 908 (2005).

555 P2d 445 (1976), officers with probable cause were justified in entering a residence without a warrant to prevent a suspect's escape after they knocked on the door and heard the defendant say, "Hurry, they are coming." (Internal quotation marks omitted.) The court explained that, "[i]n the exigencies of the moment, the officers could not reasonably be expected to put fine weights in the scale in weighing the chances of securing the house or of losing their quarry." *Id.*

Here, defendant relies on *State v. Wynn*, 102 Or App 1, 792 P2d 1234 (1990), where we held that evidence of exigent circumstances was insufficient to support a warrantless search. In that case, the police had evidence that the defendant may have monitored a police scanner in the past to learn of any police reports involving himself and that he was in the process of moving to a new residence; however, police also knew that less than two hours before police arrived, the defendant was passed out from methamphetamine use. *Id.* at 3. We held that those circumstances did not establish a likelihood that the defendant had learned that the crime was reported or that he would immediately attempt to escape or destroy evidence. *Id.* at 4-5. Further, police did not make any attempt to obtain a search warrant, even though it was possible to do so in less than an hour and to set up surveillance on the residence to prevent the defendant's escape. *Id.* at 3-4.

Defendant emphasizes that, similarly here, the intended subject of the search, Villardo, was in the process of moving, and there is no indication that Villardo was aware of the police investigation or that he was moving to escape capture. However, unlike in *Wynn*, the record here indicates that the officers could not set up surveillance on the house during the time it would take to obtain a search warrant because there were cameras monitoring the house and many of the members of the local drug community could identify undercover officers and their vehicles. Under those circumstances, any officer surveillance presented a risk that Villardo or defendant would discover the investigation and would either destroy evidence or attempt to escape capture. *See Girard*, 276 Or at 515 (explaining that an officer's determination of exigent circumstances depends on a variety of factors, such as "the feasibility of 'surrounding' the house or otherwise preventing escape, including the size of the house, the number of

exits, the proximity of the house to cover for a person bent on escape, [and] visibility").

Further, in contrast to *Wynn*, where the officers were aware that the defendant was probably passed out and therefore not imminently mobile, here there was evidence that Villardo's move was to occur that very morning. Consistent with that evidence, police arrived at 9:35 a.m. to find Villardo fully dressed and alert. The additional one and one-half hours required to obtain a warrant would have pushed officers' contact with Villardo to late morning, risking that Villardo would have moved by then.

Finally, the record supports the trial court's finding that Jenista was actively working, during the three days between the time he learned of Villardo's planned move and the disclosure that the move was imminent, to confirm the confidential informant's statement with a polygraph examination for the warrant. Accordingly, contrary to defendant's contention, police did not contribute to creation of the exigency by failing to obtain a warrant earlier. The trial court therefore did not err in denying the motion to suppress.

Affirmed.