GARRETT, J.
*662 This case is before us on remand from the Supreme Court, which reversed our decision in State v. Ritz , 270 Or. App. 88, 347 P.3d 1052 (2015) ( Ritz I ), rev'd and rem'd , 361 Or. 781, 399 P.3d 421 (2017) ( Ritz II ). In Ritz I , we affirmed defendant's conviction for driving under the influence of intoxicants (DUII), ORS 813.010, and driving while suspended, ORS 811.182. Id. at 101, 347 P.3d 1052. In holding that the police did not violate defendant's constitutional rights when they forcibly entered his home without a warrant, we concluded that the officers' reasonable belief that evidence of defendant's blood alcohol content (BAC) would dissipate before the officers could obtain a warrant constituted an exigency justifying the entry. Id. at 98-99, 347 P.3d 1052. The Supreme Court reversed, holding that the dissipation of defendant's BAC did not constitute an exigency under the circumstances. Ritz II , 361 Or. at 799, 399 P.3d 421. On remand, the issue is whether the warrantless entry was nevertheless justified by other exigent circumstances on which the trial court relied. For the reasons explained below, we conclude that it was not. Accordingly, we reverse and remand to the trial court for further proceedings.
When reviewing a denial of a motion to suppress, we are bound by the facts found by the trial court that are supported by evidence in the record. State v. Marshall , 254 Or. App. 419, 421, 295 P.3d 128 (2013). Whether those facts describe circumstances *399 that justify a warrantless search is a question of law. State v. Dahl , 323 Or. 199, 205, 915 P.2d 979 (1996). In accordance with that standard, we recite the facts and pertinent procedural history from Ritz I , including additional undisputed facts that are relevant to our decision on remand:
"At approximately 10:15 p.m., police received a dispatch report that a man and a woman were fighting in a driveway near a vehicle that had crashed into a ditch. At approximately 10:30 p.m., Detective McCourt of the Brookings Police Department arrived at the scene. Deputy Lorentz of the Curry County Sheriff's Office also arrived shortly after. Police observed a white truck in a ditch in close proximity to a driveway. A woman, Wilson-McCullough, was at the scene. Her statements to Lorentz established that she *663 lived at the residence with defendant, who had driven the truck and had been drinking that day. Wilson-McCullough accompanied Lorentz up the driveway to the residence, a small trailer, to look for defendant. Wilson-McCullough opened the door, and Lorentz looked through the door. Lorentz could see the whole trailer through the door and did not see defendant. Lorentz heard what sounded like someone running through nearby bushes, but he could not locate anyone there, either."
270 Or. App. at 89, 347 P.3d 1052. McCourt and Lorentz left, and Lorentz drove to the crash site, where State Trooper Spini had also arrived. After investigating the crash site,
"Spini returned to the trailer residence at 12:56 a.m. As he was pulling up, he saw defendant standing just outside the trailer, near the door. Seconds later, defendant went inside and closed the door. He briefly stuck his head out the door, then closed it again. Spini called out to defendant to ask him to come outside. At 1:05 a.m., Spini called Lorentz to report that he had seen defendant enter the residence. Lorentz returned to the scene at 1:12 a.m. At Spini's request, [three] Brookings police units also arrived to provide assistance."
Id. at 90, 347 P.3d 1052. The Brookings officers formed a perimeter around the trailer, which was a small, 26-foot travel trailer. Lorentz and Spini discussed what to do next.
"Lorentz and Spini decided that they needed to act quickly. Lorentz later testified that obtaining a telephonic warrant in Curry County takes approximately 45 minutes. Spini testified that he could have used his 'in-car computer' to prepare a warrant application at the scene. Nevertheless, he estimated that it would have taken 90 minutes to prepare the warrant application, and then slightly longer to actually obtain the warrant. The trial court found that testimony credible. Spini testified that he decided not to apply for a warrant because he was concerned about the loss of evidence due to the dissipation of alcohol in defendant's bloodstream; thus, he believed that an exigency existed such that no warrant was required. Lorentz also testified that they wanted to minimize the time that the Brookings officers were at the scene because those officers were out of their jurisdiction and needed to return to their normal duties.
*664 "The trailer door was locked. Lorentz entered the trailer through a window, then opened the door for Spini. Defendant was in the bathroom. After some conversation, defendant agreed to come out of the bathroom. *** Spini arrested him at 1:33 a.m. *** Defendant made incriminating statements, and a breath test administered at 2:23 a.m. showed that defendant had a blood alcohol concentration (BAC) level of 0.14 percent.
"Before trial, defendant moved to suppress evidence obtained after the warrantless entry into his home. He argued that the entry was unlawful, and that his statements and the BAC evidence were required to be suppressed because of the illegality. The state argued that the entry was lawful based on probable cause and exigent circumstances. The state also argued that the entry was justified because, when defendant retreated into the interior of his trailer, police were allowed to follow him inside because they were in 'hot pursuit.' "
Id. at 90-91, 347 P.3d 1052.
The trial court agreed with the state and denied defendant's motion, concluding:
*400 "The officers did have probable cause to believe that defendant had committed the offense of driving under the influence prior to entry into the trailer. Shortly before entry the officers had probable cause to believe that he was in the trailer and that evidence of DUII might be obtained by sample of blood or breath. They had reason to believe that the defendant saw them and heard them and was attempting to defeat an otherwise legal contact in a public place by retreating into the interior of the trailer.
"Exigent circumstances and hot pursuit both provide a valid basis for entry into the trailer without a warrant in this case. Additionally, the officers had safety concerns because the Brookings officers, who were providing back-up, would have to stay a much longer period of time to provide back-up in the event that a warrant was sought, leaving them unavailable to patrol in the city of Brookings, which is where they ordinarily work. This arrest occurred outside of the city of Brookings. Officer safety concerns compelled those Brookings officers to stay on scene until the arrest was effected, so this was an additional exigent circumstance."
*665 On appeal, defendant assigns error to the denial of his motion to suppress, arguing that the warrantless entry violated his rights under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. In Ritz I , we affirmed on the ground that the state had proven exigency by showing that the officers reasonably believed that defendant's BAC would have lost all evidentiary value if officers waited to obtain a warrant. 270 Or. App. of 98-99. In light of that conclusion, it was unnecessary to address the other justifications-hot pursuit and officer safety-cited by the trial court and the state. Id. at 93, 347 P.3d 1052.
The Supreme Court reversed and remanded our decision, reasoning that, "at the time that officers entered defendant's home, they had no reason to think that obtaining a warrant to enter the home would delay a consensual search for defendant's BAC evidence, because they had no reason to think that defendant would consent to such a search." Ritz II , 361 Or. at 796, 399 P.3d 421. The Supreme Court did not discuss other possible exigencies justifying the warrantless entry, leaving that to be addressed on remand. The parties have submitted supplemental briefing.
Both Article I, section 9, and the Fourth Amendment protect persons against unreasonable searches by police. Under those provisions, a warrantless search is per se unreasonable unless the search falls within one of the "few specifically established and well-delineated exceptions" to the warrant requirement. Katz v. United States , 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed. 2d 576 (1967) ; State v. Baker , 350 Or. 641, 647, 260 P.3d 476 (2011). One exception to the warrant requirement is the "exigency" exception, under which the state must show that police had probable cause to believe that defendant committed a crime and that an exigency exists. State v. Snow , 337 Or. 219, 223, 94 P.3d 872 (2004). Exigent circumstances are those that "require[ ]police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." State v. Stevens , 311 Or. 119, 126, 806 P.2d 92 (1991). Defendant does not dispute that police had probable cause to believe that defendant had committed the crime *666 of DUII; therefore, the sole question is whether exigent circumstances existed.
On remand, the state contends that the officers' "hot pursuit" of defendant presented an exigent circumstance "because forestalling a suspect's escape presents an exigency."[1] Such an exigency arises when "officers have reason to believe the defendant intends to 'make a break' " and " 'the possibility *401 of "making a break" exists.' " State v. Peller , 287 Or. 255, 264, 598 P.2d 684 (1979) (quoting State v. Peller , 37 Or. App. 467, 475, 587 P.2d 510 (1978) ). "[T]he mere possibility that defendant could make a break if he were so inclined" does not give rise to exigency "when there is no indication that he is, in fact, so inclined." Id. ; State v. Wynn , 102 Or. App. 1, 4, 792 P.2d 1234 (1990). Otherwise, warrantless entry would be justified any time police announce their presence and a person refuses to come out, which would "all but eliminate the requirement that there be exigent circumstances in order to justify a warrantless entry to arrest." Peller , 287 Or. at 264, 598 P.2d 684.
Cases in which a defendant was inclined to "make a break" have involved either the defendant's attempt to openly flee from police or some other similar manifestation of an intent to escape from police. Compare id. (no exigency where the defendant spoke with officers at his door, and then, when officers returned about 20 minutes later, remained in his house and refused to respond to the officers' requests to come out), and Wynn , 102 Or. App. at 4-5, 792 P.2d 1234 (no exigency where the only evidence of the defendant's intent to escape was the officers' testimony that the defendant was in the process of changing residences and, at some indefinite time in the past, had claimed to have listened to a police scanner, and thus could have known that police had targeted him), with State v. Wright , 280 Or. App. 259, 263-64, 381 P.3d 944 (2016) (exigency where the defendant ignored the pursuing officer's attempts to initiate a traffic stop, accelerated away from the officer at a high speed, drove to a house, drove his car into a *667 garage, and closed the garage door behind him, and where the pursuing officer was the only officer at the scene), and Snow , 337 Or. at 224, 94 P.3d 872 (exigency justified police entry into a car to search for the defendant's name and address where the defendant ignored an officer's overhead lights, accelerated away from the officer, abandoned the car to flee on foot, and where the pursuing officer was unable to recognize the defendant and needed to identify him to prevent his further escape), and State v. Niedermeyer , 48 Or. App. 665, 669-70, 617 P.2d 911 (1980), cert. den. , 450 U.S. 1042, 101 S.Ct. 1761, 68 L.Ed.2d 239 (1981) (exigency where the defendant sped away from a traffic stop, drove to a house, and then ran on foot into the house), and State v. Girard , 276 Or. 511, 514-15, 555 P.2d 445 (1976) (exigency where police saw the defendant carry stolen items away from a house and police also heard someone say, "Hurry, they are coming" when officers knocked on the door).
Past cases have also distinguished a defendant's intent to escape from police from an intent to merely remain in a house and not cooperate with police. See Peller , 287 Or. at 264-65, 598 P.2d 684 (police had "no indication that defendant would attempt to 'make a break,' even if he could have done so," where he "simply remained in his house and refused to respond to the police," because those actions were "as consistent with an intent to remain in the house as they [were] with an intent to escape," and, instead, the officers "should have staked out the house and obtained a warrant before entering").
In light of our case law, we conclude that the record does not support an objectively reasonable belief on the officers' part that defendant intended to "make a break" from his trailer after the police arrived. By the time officers entered the trailer, they had observed defendant step inside his trailer upon spotting Spini's approaching police car, stick his head briefly out his door, and refuse to respond to officers' requests to come out. Officers also suspected, but could not confirm, that defendant had avoided them in the bushes when they visited the trailer two and one-half hours earlier. However, officers neither saw defendant try to openly flee nor heard defendant say anything suggesting that he was going to try to "make a break," as in Girard . Finally, the officers here had defendant's home surrounded, which makes it *668 less reasonable to have believed that defendant might have tried to evade police by fleeing the home.[2] Cf., e.g. , *402 Minnesota v. Olson , 495 U.S. 91, 100-01, 110 S.Ct. 1684, 109 L.Ed. 2d 85 (1990) (no exigency justifying a warrantless entry to prevent a suspect's escape where three or four police officers surrounded the house in which defendant was visiting, as "[i]t was evident the suspect was going nowhere" because "[i]f he came out of the house he would have been promptly apprehended"). In short, the circumstances here establish, at most, that defendant intended to remain in his home and refuse to cooperate with police. Accordingly, the trial court erred in concluding that the warrantless entry was justified by the officers' "hot pursuit" of defendant.
Reversed and remanded.

As noted, the trial court also cited "officer safety" concerns as a justification for the warrantless entry. On appeal, the state does not defend that rationale, and we conclude that it is unsupported by any evidence in the record that officers at the scene had a reasonable suspicion that defendant posed an "immediate threat of serious physical injury" to those present. State v. Jimenez , 357 Or. 417, 423, 353 P.3d 1227 (2015) ; State v. Bates , 304 Or. 519, 524, 747 P.2d 991 (1987).

The state points out that the three Brookings officers would have had to leave the scene to return to Brookings before a warrant could have been obtained. Even assuming that that is true, nothing in the record provides a basis for inferring that the remaining two officers, Lorentz and Spini, would have been unable by themselves to monitor the entry and exit points of a small trailer.