Argued and submitted April 30, 1984; resubmitted In Banc January 16, affirmed
January 30, reconsideration denied April 5, petition for review denied May 7, 1985
(299 Or 154)

STATE OF OREGON,
*Respondent,*

*v.*

ROBERT ALLEN NORTH,
*Appellant.*

(10-81-10934; CA A29068)

694 P2d 990

Donald E. Thies, Eugene, argued the cause and filed the brief for appellant.

Brenda J. Peterson, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Robert E. Barton, Assistant Attorney General, Salem.

BUTTLER J.

Warren, J., dissenting.

## BUTTLER, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992, claiming that the evidence against him was obtained as a result of two illegal stops and an illegal seizure of his luggage. He contends that his initial encounter with the police was an unlawful stop, that the subsequent stop of his vehicle was unlawful and that the warrantless seizure of his luggage was without probable cause. We affirm.[1]

The facts are not in substantial dispute. Defendant flew from Eugene to Los Angeles (a city known to the Drug Enforcement Administration as a "source" city through which cocaine is distributed nationwide) on November 9, 1981, and returned to Eugene the following day. Two police officers, who had been on the same flights to Los Angeles and back to Eugene transporting a prisoner, contacted Officers Wilson and Tindall, who were on narcotics detail at the airport. They reported that defendant went to the restroom several times and looked nervous on the return flight, implying that he fit the profile of a narcotics transporter.

Wilson and Tindall watched defendant while he waited for his luggage. Tindall testified that he observed defendant scanning the crowd, looking around, appearing nervous and smoking two or three cigarettes in the ten minutes before his luggage arrived. When the luggage appeared, defendant picked up two attache-type suitcases and proceeded out of the airport at a "pretty fast pace," turning around on several occasions in what appeared to the officers to be attempts to see if anyone was following him.

The officers approached defendant in the airport parking lot as he was in the process of loading his luggage into his van. They identified themselves, displayed their badges and asked if they could talk with him. Defendant responded affirmatively. They then asked for his identity and questioned him about his recent flight and final destination. When asked his name, defendant stated that he was "Bill Nixon" and displayed a one-way ticket from Los Angeles in that name. He

---

[1] Defendant also claims that a jury instruction given by the trial judge was erroneous. We do not address the issue, because the claimed error was not preserved in the trial court.

denied ownership of the vehicle he was loading, declined to display its registration and said that it had been loaned to him by a friend, "Bill Johnson," whose exact address he did not provide. When asked for identification, defendant denied that he had any, including a driver's license. When the officers pointed out defendant's visible wallet, he stated, "All I have is bucks," and declined to show it. When asked if the luggage contained narcotics, defendant responded negatively. When the officers asked if they could look, defendant stated, "I don't think you need to."

Tindall testified that defendant was extremely agitated during this contact. In fact, he was more nervous than anyone he had contacted under similar circumstances. Both Tindall and defendant testified that, when defendant asked twice if he could leave, he was told that he could do so. Between five and ten minutes after the initial encounter, defendant did leave the airport parking lot and was not restrained in any way from doing so.

After defendant left the airport, the officers checked his parking ticket and found that his van had been parked in the airport parking lot the day before, which was inconsistent with what defendant had told them, but consistent with the other two officers' report that defendant had left Eugene the day before. Wilson and Tindall ran a license check on the vehicle and found that it was registered to Robert North, who fit the description of defendant. The officers concluded that defendant had not been truthful with them, and they followed him after he left the airport.

Tindall testified that, as they followed defendant down the highway, he failed to stop at a stop sign and nearly collided with a cattle truck. He did not turn onto a freeway ramp that the officers felt would be appropriate for his stated destination, Gold Hill. Given defendant's conduct and the information the officers had acquired from him and the other sources, they radioed a marked Springfield police car to stop defendant's van. Just before the stop, Tindall and Wilson were advised that the owner of the van, Robert North, had a "cultivation case from Jackson County on his record." The Springfield police officers requested that defendant produce his driver's license. Defendant complied, revealing his true

identity as Robert North. He was again questioned by Wilson and Tindall.

Tindall asked defendant why he had lied about his name at the airport. The officer testified that he thought that defendant's response was that he suspected the contact might have been a "ripoff." Tindall understood that response to be slang for theft of drugs or money from a drug transaction. The Springfield police officer had defendant do some field sobriety tests, and Tindall advised defendant that they were going to "seize" his luggage. Although there is conflicting testimony as to defendant's response, the state does not rely on his consent.

The officers seized the luggage and took it to the Hillsboro Police Department, where a police dog "alerted" on both pieces, indicating that they contained contraband. The following day, a search warrant was issued and the bags were searched. A quantity of cocaine was found. Defendant was charged with one count of unlawful possession of a controlled substance. At trial, he moved to suppress, claiming that: (1) the initial stop at the airport by the officers was not reasonable; (2) the stop of his vehicle on the highway was without "probable cause"; and (3) the seizure of defendant's luggage was without probable cause. The trial court denied the motion, ruling that the airport questioning was not a stop, that the vehicle stop by the Springfield police was reasonable and that there was probable cause after the stop to believe that defendant's luggage contained a controlled substance, justifying seizing the luggage. Defendant appeals, claiming that the court erred in denying his motion to suppress for the reasons stated above.

We agree with the trial court that the initial encounter was not a stop within the meaning of ORS 131.605(5). Defendant was at his van in the parking lot when the officers approached him, identified themselves and asked if they could talk to him. He said they could. It was closely akin to the third category of encounters described in *State v. Warner,* 284 Or 147, 161, 585 P2d 681 (1978). There was no effort to restrain defendant's freedom of movement, and he was told when he asked that he was free to leave. What occurred here seems to come within the *dictum* in *State v. Kennedy,* 290 Or 493, 498, 624 P2d 99 (1981):

"It is clear, however, that a police officer may approach a

citizen, identify himself as an officer and ask some preliminary questions without making a 'stop.' * * *."

Accordingly, there was no "stop," and all of the information that the officers possessed by the time they stopped defendant's van was obtained lawfully.

■ Defendant contends that the stop of his van in Springfield was tainted by the earlier encounter at the airport and that the officers "did not have probable cause to make the stop of his vehicle." Because ORS 131.615 requires only that an officer reasonably suspect that a person has committed a crime before stopping and detaining him, defendant's probable cause argument is irrelevant. The police did have a reasonable suspicion. The error assigned, therefore, is without merit.

■ Defendant's final challenge to the trial court's ruling on his motion to suppress is that the warrantless *seizure* of the luggage from his vehicle following the stop was unlawful for want of probable cause to do so. He does not challenge the lawfulness of the later "dog sniff" inspection of the luggage or the length of its detention for that purpose. *See United States v. Place,* 462 US 696 103 S Ct 2637 77 L Ed 2d 110 (1983); *State v. Lowry,* 295 Or 337, 667 P2d 996 (1983). Accordingly, we consider only whether there was probable cause to "seize" the luggage from his van.

By the time the officers decided to "seize" the luggage, they knew that defendant had traveled to and from Los Angeles, a city known to be a "source" city through which cocaine is distributed nationwide. During their initial encounter with him, defendant had lied about the duration of his trip, his identity, ownership of the van and his not having a driver's license, and the officers had found out that he had lied about those things. He refused to show them the registration for the van. He was not only very nervous, but was exceptionally agitated during that encounter, and on leaving the airport he drove through a stop sign and nearly collided with a cattle truck. The officers had also learned that defendant had been arrested for "cultivation" in Jackson County. Although defendant had told the officers that he was going to a basketball game in Gold Hill, he drove past the appropriate freeway turnoff for that destination.

After defendant was stopped by the Springfield police officers, he showed them an Oregon driver's license in his true name. When Tindall asked defendant why he had lied to him earlier, defendant stated that he feared a "ripoff," even though the two police officers had identified themselves and displayed their badges. When defendant was asked to whom the luggage belonged, he stated that it was not his, that he was to deliver it to someone who lived up the McKenzie River. Tindall testified that, in his experience, large quantities of narcotics normally are transported in luggage rather than on the person.

Accordingly, we conclude that the officers had sufficient information to lead them, as reasonable persons, to believe that defendant possessed a controlled substance, *State v. Anspach,* 298 Or 375, 692 P2d 602 (1984), and because he was not then arrested, there was practical necessity, or exigent circumstances, for taking possession of the luggage without a warrant for a sufficient period of time to permit its contents to be verified by a "dog sniff" and to obtain a search warrant. *State v. Lowry, supra.* After the "dog sniff" verified that the contents of the luggage were controlled substances, the officers obtained a search warrant to search the luggage. Defendant challenges only the warrantless "seizure" of the luggage, not the length of its detention for purposes of the "dog sniff" or the lawfulness of the search of the luggage pursuant to search warrants.

Affirmed.

**WARREN, J.,** dissenting.

I do not take issue with the majority's conclusion that the initial questioning of defendant and the subsequent stop of his van were lawful. Because I think that the warrantless seizure of the luggage was not based on probable cause to believe that it contained contraband, I would reverse and, accordingly, I dissent.

Warrantless seizures are "per se unreasonable," subject to a few specifically established exceptions. *Katz v. United States,* 389 US 347, 357, 88 S Ct 507, 514, 19 L Ed 2d 576 (1967); *State v. Greene,* 285 Or 337, 591 P2d 1362 (1979). In the absence of consent, the state and federal constitutions require a showing of probable cause and exigent circumstances to justify any seizure without a warrant. *Dunaway v.*

*New York,* 442 US 200, 99 S Ct 2248, 60 L Ed 2d 824 (1979); *State v. Gressel,* 276 Or 333, 554 P2d 1014 (1976); *State v. Dupay,* 62 Or App 798, 805, 662 P2d 736, *rev den* 295 Or 541 (1983).

"Probable cause" in this kind of case is a reasonable belief, under the circumstances existing at the time and place, defendant's luggage was seized, that it contained contraband. *See State v. Greene, supra,* 285 Or at 341. The state claims that the fact that defendant's behavior fits a drug courier profile, coupled with his apparent lies concerning his identity and ownership of the vehicle and his erratic driving, provided ample basis for the officers reasonably to believe that defendant had committed the crime of possession of a controlled substance. I am not persuaded.

The drug profile does not provide articulable, objective facts necessary for probable cause to believe that *this* defendant was carrying drugs. *See Florida v. Royer,* 460 US 491, 103 S Ct 1319, 75 L Ed 2d 229 (1983) (a defendant's matching drug courier profile does not provide probable cause to arrest); *Reid v. Georgia,* 448 US 438, 100 S Ct 2752, 65 L Ed 2d 890 (1980). The quick trip to Los Angeles, use of a false name and observed "nervousness" during the flight describe conduct probably engaged in by many innocent travelers. Those circumstances cannot provide a basis on which to subject a person to a search or seizure. They do not contribute to an objective determination that this particular defendant's luggage contained a controlled substance. Many business travelers spend a day in Los Angeles, and even more people are nervous about air travel. There are many lawful explanations for traveling under a false name.

This defendant was under no obligation to allow the officers to search his luggage. *See State v. Gressel, supra.* Although his failure to cooperate with the officers' inquiries may reasonably have led them to believe that he had something to hide, it does not form an objective basis to believe his luggage contained contraband. In *Gressel,* the Supreme Court found that a defendant's obviously false response to an officer's inquiry could not sustain the search of his person. In that case, the officer found two "bulges" in the defendant's pockets while conducting a pat down. When asked what was in the pockets, the defendant replied, "Nothing." The officer

subsequently reached into one of the man's pockets and pulled out a bag of marijuana. The Supreme Court suppressed the marijuana, explaining that it viewed the defendant's response to the inquiry concerning the contents of his pockets as "merely an unsophisticated attempt to assert his right of privacy." 276 Or at 338. In this case, as in *Gressel,* the fact that defendant did not answer truthfully does not create probable cause to believe he had committed a crime.

The additional facts that defendant allegedly ran a stop sign and had a "cultivation case on his record" also do not count as objective facts on which to form a reasonable belief that, at the time and place in question, defendant was carrying contraband. Although the fact that defendant may have run a stop sign could give the police a reason to stop his van, it provides no reason for seizing his luggage. *See, e.g., State v. Hoggans,* 35 Or App 669, 674, 582 P2d 466 (1978) (there must be some basis beyond justification for a traffic stop to search defendant's vehicle).

When defendant's luggage was seized, the officers knew that he fitted certain aspects of a drug profile developed by the Drug Enforcement Administration and that he lied to the police. Unless one is willing to concede that all people who fit the drug profile and lie probably carry drugs, there were no objective facts at that time and place to give a reasonable person cause to believe that defendant's luggage contained drugs. I am not willing to concede the majority's broad generalization to the contrary effect and would hold that the officers' information was inadequate to provide probable cause to seize the luggage. I think the court should have suppressed the evidence and respectfully dissent.

Gillette, Warden and Newman, J.J., join in this dissent.