Argued and submitted October 2, 1987, affirmed January 27, reconsideration denied April 22, petition for review denied May 17, 1988 (305 Or 672)

STATE OF OREGON,
*Appellant,*

*v.*

CHARLES EDWARD NICHOLSON,
*Respondent.*

(10-86-01624; CA A42364 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

PATRICK RUSSELL BOWLING,
MICHAEL PATRICK BOWLING
and CHARLES EDWARD NICHOLSON,
*Respondents.*

(86 CR 0119 TM; CA A42590)
(Cases Consolidated)

748 P2d 1028

Terry Ann Leggert, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert J. McCrea, Eugene, argued the cause and filed the brief for respondents.

Before Warden, Presiding Judge, and Joseph, Chief Judge,* and Van Hoomissen, Judge.

VAN HOOMISSEN, J.

___

* Joseph, C. J., *vice* Young, J., deceased.

## VAN HOOMISSEN, J.

These criminal cases are consolidated for appeal. The state seeks reversal of orders of two trial courts suppressing evidence seized from a parked car and from rural premises. ORS 138.060(3). Both courts found that the initial seizure of the car was unlawful and that the later search, conducted pursuant to a warrant, was tainted. We affirm.

The evidence shows[1] that defendant Nicholson rented a motel room in Springfield. Other persons visited him there. When Nicholson checked out, he was accompanied by a second person. A maid found a coat that Nicholson had left behind. On examining it, she found two guns and what appeared to be drugs. The motel staff called the Springfield police; they were told to hold the coat until officers arrived. Nicholson returned and asked for his coat but, before he could get it, the officers arrived. When Nicholson saw them, he ran. The officers arrested him in an adjacent field. He was given *Miranda* warnings. The coat had an odor which the police associated with methamphetamine. The police found a package that appeared to contain methamphetamine in the coat.

An unoccupied Corvette was parked outside the motel; it had not been there before Nicholson came to pick up his coat. The car was unlocked; a window was partially rolled down. The police smelled a strong odor associated with methamphetamine coming from it. It was not registered to Nicholson, but he had listed a Corvette on his motel registration. The police took from him a set of keys which fit the car. They did not know if anyone else had accompanied him to the motel.

After smelling the odor coming from the car, the police decided not to allow anyone to enter or take it. They towed it to a secure area at the Springfield police department. Three Springfield officers were on duty at the time when Nicholson was arrested; one took charge of the arrest and booking; one interviewed witnesses in the motel; and the third took charge of the Corvette.

---

[1] Our recitation of the historical facts includes the facts as found by one trial court and those facts we presume to have been found from the evidence consistently with the ultimate conclusions of both trial courts. *Ball v. Gladden,* 250 Or 485, 433 P2d 621 (1968).

Although the arrest occurred on Saturday, there was a tape recorder at the police station and a district attorney was on call to assist in obtaining search warrants. It was possible to find a judge to issue a warrant, although the officers did not know how long it would take to get a telephonic search warrant on Saturday. It took about three and one-half hours to get the search warrant on Monday morning. One officer testified that it would have taken longer to get a warrant on Saturday.

Nicholson was initially charged only with possessing firearms with obliterated serial numbers.[2] He was not arrested on a drug charge, because the police were not sure what kind of drugs they were and the district attorney had a policy that persons not be arrested on drug charges until after lab analysis. Nicholson was released from jail at 6:30 p.m. on Saturday. His request for the return of the Corvette was denied.

The following Monday morning, the officers obtained a search warrant and searched the Corvette. They found nine ounces of methamphetamine, which was an unusually large amount in their experience. They also found a map which they believed might help them identify other persons connected with the Corvette and the drugs and which might also indicate where the drugs were manufactured.

In proceedings against him in Lane County, Nicholson moved to suppress the evidence found in the Corvette, alleging violations of his rights under the Oregon Constitution. The discovery of that evidence was reported in an affidavit used to obtain a warrant for the search of buildings in rural Deschutes County. That search revealed a laboratory for the production of methamphetamine and resulted in indictments against all the defendants in these consolidated cases. In Deschutes County, Nicholson and the other defendants moved to suppress evidence gained from the search of the buildings depicted on the map, as the fruits of the unlawful seizure of the Corvette in Lane County. *See* ORS 133.683. Both trial courts granted the motions.

---

[2] The state dropped the firearms charge against Nicholson. He appeals from a later indictment on two counts of possession of a controlled substance, ORS 475.992(4)(b), arising from the same incident. All defendants appeal from indictments in Deschutes County charging criminal conspiracy to manufacture a controlled substance, possession of a controlled substance, and manufacturing a controlled substance. ORS 161.450; ORS 475.992.

The state contends that the trial courts erred in failing to find that exigent circumstances existed to justify the warrantless seizure of the car. Defendants contend that we are bound by the trial courts' findings and that the state has not shown exigent circumstances.

■ Article 1, section 9, of the Oregon Constitution provides safeguards for both searches and seizures. *State v. Owens,* 302 Or 196, 205, 729 P2d 524 (1986). The case at bar concerns a warrantless seizure of a car which was parked, immobile and unoccupied at the time the police first encountered it. In *State v. Kock,* 302 Or 29, 33, 725 P2d 1285 (1986), the court held that a search of a car must either be authorized by a judicial warrant or there must be exigent circumstances, other than the mobility of the car, to justify a warrantless search. In so holding, the court refused to extend the *per se* exigency rule, established in *State v. Brown,* 301 Or 268, 721 P2d 1357 (1986), for cars that are moving when first encountered by officers, to cars that are immobile when first encountered. To justify a warrantless search of an immobile and unoccupied car the prosecution must demonstrate individualized exigent circumstances. *State v. Kock, supra.*

The exigent circumstances exception to the warrant requirement is a recognition that practical necessity may require evidence to be seized before a warrant can be obtained. *State v. Brown, supra,* 301 Or at 274; *State v. North,* 72 Or App 1, 7, 694 P2d 990, *rev den* 299 Or 154 (1985). The state has the burden of showing that the evidence was lawfully seized. ORS 133.693(4).

The state contends that the exigency justifying the instant seizure was the practical need to prevent the removal and destruction of evidence. It argues that the officers had probable cause to believe that the car contained methamphetamines; that other persons visited Nicholson at the motel earlier in the day; that the car was registered to another person who might have a set of keys; that it was parked in a motel parking lot in full view of two motels and passersby, with the doors unlocked and the windows rolled down; that many bystanders had witnessed Nicholson's arrest; and that the officers were concerned about the state's civil liability if the car were left on the motel's lot.

The state concedes that it would have been possible

for the officers to get a warrant to search the car on Saturday afternoon. Officer Swenson testified that the required tape recorders were available ten minutes away at the Springfield police department and that an assistant district attorney was available to help to seek a warrant. However, Swenson testified that all three of the Springfield officers on duty that day were busy with the investigation. He testified that he was "tied up" with Nicholson, that Officer Edwards was gathering information from the motel and that Officer Kunkler was "going to be with the car, taking it to the shop since securing it * * *." He testified that it would have been a drain on personnel to have someone stay with the car during the time that it would have taken to get a warrant. Both trial courts held that there was probable cause to seize the car but that the evidence must be suppressed, because no exigent circumstances excused the failure of the police to obtain a search warrant. *State v. Green,* 285 Or 337, 591 P2d 1362 (1979). We agree.[3]

Kunkler was assigned to watch the car until it was secured at the police department. Assigning Kunkler to watch the car while the officers obtained a warrant would have been the correct procedure. *See State v. Lowry,* 295 Or 337, 348, 667 P2d 996 (1983). Furthermore, Kunkler's presence eliminated any possibility that the state would be liable for harm caused by the car's remaining in the parking lot while a warrant was obtained. Further, we cannot hold that the possibility of someone arriving and attempting to remove the car or the evidence that it contained in the period before the warrant arrived was not so great as to amount to an exigent circumstance.

The state urges us to follow the holding of *State v. Green, supra,* in which the Supreme Court stated:

"We conclude that it would not be correct to determine Fourth Amendment rights on the happenstance of whether someone will try to remove a car or evidence before or after a warrant is obtained. The *distinct possibility* was present that someone might try to do so before a warrant could be obtained

---

[3] *State v. Kock, supra,* decided under the Oregon Constitution, requires that exigent circumstances be proven in order to circumvent the warrant requirement of Article I, section 9. *State v. Green, supra,* although decided on Federal Fourth Amendment grounds, also states one application of the "practical necessity" approach which the Oregon courts have used to determine exigent circumstances under the Oregon Constitution. *See State v. Green, supra,* 285 Or at 342; *State v. North, supra.*

and that supplies the exigent circumstances." 285 Or at 345. (Emphasis supplied.)

However, in the records presented to us in this consolidated appeal, we find almost no evidence that anyone would attempt to remove the car or the evidence in it. The record discloses only a generalized concern that "someone" might interfere with the car. Oregon courts have held that the possibility that such interference would occur before a warrant could be obtained constituted exigent circumstances only when the state has proven that identifiable persons with a motive to interfere existed. *See, e.g., State v. Peller,* 287 Or 255, 262, 598 P2d 684 (1979); *State v. Fondren,* 285 Or 361, 366, 591 P2d 1374, *cert den* 444 US 834 (1979); *State v. North, supra,* 72 Or App at 7; *State v. Ritter,* 71 Or App 282, 286-87, 692 P2d 158 (1984); *State v. Kirsch,* 69 Or App 418, 421, 686 P2d 446, *rev den* 298 Or 151 (1984); *State v. Burnam,* 66 Or App 132, 137, 672 P2d 1366 (1983); *State v. Stacey,* 17 Or App 662, 664, 523 P2d 612 (1974). Furthermore, one of the officers testified that he did not believe that an emergency situation existed. We agree with the trial courts that none existed. Therefore, the warrantless seizure was invalid.

The state also contends that the Lane County trial court erred in excluding evidence concerning whether the officers had obtained Nicholson's consent to seize the car. Nicholson moved to exclude his response to an inquiry from Swenson about what he wanted done with the car. He argued that it was an inquiry designed to connect him to the car, which violated his asserted right not to answer questions without his lawyer present. We do not reach the merits of this contention, because the officers conceded that they had not received Nicholson's consent.[4] That concession leads to the

---

[4] Kunkler testified:

"Q. Two more questions. Mr. Nicholson never gave you any permission to seize the coat or any of its contents, is that correct?

"A. No, sir.

"Q. No, he did not give you consent.

"A. No, he did not.

"Q. All right. And similarly, he gave you no consent to seize the Corvette, is that true?

"A. That's true."

Swenson testified:

"The Court: Wait a minute. You did not have any thought the defendant had told you you could search the car, did you?

"A. No."

inferred finding that there was no consent, which is consistent with the Lane County court's decision to exclude the evidence.

■ The state argues that, even if the seizure of the Corvette was unlawful, the map discovered during the warranted search of the car and evidence derived from the map should not be suppressed. It relies on *State v. Hansen,* 295 Or 78, 664 P2d 1095 (1983), to argue that only evidence which is the "primary" focus of the search warrant should be suppressed. It asserts that the purpose of the warrant was to discover methamphetamine and evidence concerning the identity of the ownership and occupancy of the Corvette and that the map was peripheral to that purpose.

In contending that the holding in *Hansen* was that evidence which was not the primary "focus" of the search warrant was admissible, the state misreads *Hansen,* where the search warrant had no bearing on the determination of what evidence was tainted by the prior illegal conduct. In that case, one officer directed other officers to "secure" a residence suspected to contain marijuana while he attempted to get a search warrant, relying on information previously gained by him. The officers "secured" the residence by entering it, detaining everyone in it and seizing evidence in plain view, but not marijuana. When the other officer arrived with a valid search warrant, they searched the premises and seized marijuana.

The issue in *Hansen* was whether the seizure of the house was a seizure of all its contents. The court declined to hold that the seizure was of *all* the contents, because such a broad view "is not necessary to protect the people against unreasonable seizures or searches * * *." *State v. Hansen, supra,* 295 Or at 96. The court began by concluding that items of contraband that were actually discovered or clearly visible during the unlawful seizure should be suppressed. The court then addressed the question of which "property or effects present in the residence but not actually discovered or clearly visible to the unlawfully entering officers" should be suppressed. 295 Or at 96. In answering that question, the court turned, not to the scope of the valid search warrant, but to "the very purpose of the unlawful conduct of the police * * *." *State v. Hansen, supra,* 295 Or at 97. The court stated that the purpose of the unlawful seizure was to further the arrest and the conviction of the defendant for possession of marijuana,

by reducing any marijuana in the house to the officers' control. The court held that the control over the marijuana constituted "a seizure under both the state and federal constitutions and [was] thereby proscribed as being unreasonable for want of a warrant." 295 Or at 97.

After examining the purpose of the unlawful seizure in this case, we conclude that it was to convict defendant, and possibly others, of possession of the methamphetamine believed to be in the car. The map was viewed by the officers as evidence indicating who might be charged with possession. Swenson testified:

"Q. Is it fair to say you seized the map because you wanted to investigate the map to see what it connected with?

"A. We were looking for items to connect Mr. Nicholson to the car, to the belongings in the car. We wanted to find out if the map somehow was related to him."

Trooper Myers of the Oregon State Police testified:

"Q. Now, as I understand what you're saying, the only connection you would make or thought you might make between the map and the Corvette would be that if you could find people there you might know who was the owner or occupier of the Corvette, is that it?

"A. Or that might be the owner of the Corvette."

In the light of that testimony and the Deschutes County trial court's order suppressing the map and the evidence derived from the map, we conclude that the map was evidence furthering the same purpose that motivated the unlawful seizure and hold that it and evidence derived from it were properly suppressed.

Affirmed.