256 February 19, 2026 No. 113

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ROBIN RAY GILLILAND,
*Defendant-Appellant.*

Linn County Circuit Court
20CR61904; A181911

Michael B. Wynhausen, Judge.

Argued and submitted July 9, 2025.

Anne K. Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Oregon Public Defense Commission.

Baylee Seeman, Certified Law Student, argued the cause for respondent. On the brief were Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Kirsten M. Naito, Assistant Attorney General.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Convictions on Counts 3 to 8 reversed and remanded; remanded for resentencing; otherwise affirmed.

**HELLMAN, J.**

Defendant appeals his convictions for burglary in the first degree, felon in possession of a firearm, and five counts of identity theft. On appeal, he raises three assignments of error. In his first assignment of error, defendant argues that the trial court erred when it denied his motion to suppress evidence obtained from a vehicle that officers seized without a warrant. In his second and third assignments of error, defendant contends that the trial court erred when it permitted two witnesses to offer testimony "tantamount" to eyewitness identification testimony that the court had proscribed by pretrial order.

We conclude that the trial court erred by not suppressing the evidence obtained from the unlawful seizure of the vehicle. The error requires reversal of defendant's convictions for felon in possession of a firearm and identity theft, but it is harmless with respect to defendant's conviction for burglary in the first degree. We decline to address defendant's second and third assignments for lack of preservation. Accordingly, we reverse and remand defendant's convictions for felon in possession of a firearm and identify theft, remand for resentencing, and otherwise affirm.

## I.   BACKGROUND FACTS
## AND PROCEDURAL HISTORY

One evening in a quiet, residential neighborhood, a homeowner observed a man in his garage and called police. Shortly after, police officers arrested defendant. An officer showed the homeowner and a second eyewitness a photograph of defendant to help ascertain whether they had apprehended the right person. In a Pontiac that had been associated with defendant, the officers also observed a stolen firearm and towed the vehicle without a warrant. The next day, the officers conducted a warranted search of the Pontiac, recovered the stolen firearm, and discovered several stolen personal identifications of individuals that were not defendant.

Defendant moved to suppress the evidence seized from the Pontiac and the fruits thereof on the grounds that police had unlawfully seized the Pontiac. The trial court

denied that motion, ruling that the Pontiac's seizure was lawful based on exigent circumstances and the search incident to arrest exceptions to the warrant requirement. Defendant also filed a pretrial motion to prohibit the two eyewitnesses from identifying defendant as the person that they had observed on the evening in question due to the "overly suggestive" practices employed by police. The court granted that motion, but it permitted the witnesses to testify that the "physical characteristics and clothing" of the person that they had seen were "consistent" with the individual in the photograph presented to them by police.

As relevant here, a jury convicted defendant of burglary in the first degree (Count 1), felon in possession of a firearm (Count 3), and five counts of identity theft (Counts 4 to 8).

## II.   MOTION TO SUPPRESS

Defendant contends that the trial court erred when it denied his motion to suppress the evidence obtained from the Pontiac's warrantless seizure. "We review a trial court's denial of a motion to suppress for legal error and are bound by the trial court's findings of historical fact that are supported by constitutionally sufficient evidence in the record." *State v. Ribota*, 341 Or App 32, 34, 572 P3d 318 (2025) (internal quotation marks omitted). Because the assignment of error here involves a pretrial ruling, "we evaluate that argument in light of the record made before the trial court when it denied the motion, not the record as it later developed at trial." *Id*.

### A.   *Background Facts*

Prior to trial, defendant moved to suppress "all evidence seized by law enforcement officers from the Pontiac seized from Defendant without a warrant * * * and the fruits thereof." In his motion, he argued that the officers' warrantless seizure of the Pontiac violated Article I, section 9, of the Oregon Constitution and enabled police to obtain evidence that would not have "otherwise been readily available" absent the unlawful seizure. The trial court held a hearing on the motion and received the following testimony from the two officers present when the tow was called.

Although defendant had been associated with the Pontiac, the officers knew that he was not the vehicle's registered owner. Through the car window, the officers observed a handgun sitting on the front passenger seat. Based on its mostly visible serial number, the officers were able to obtain a "near hit" on a firearm reported as stolen.

At that point, the officers decided to tow the Pontiac both to preserve evidence of the stolen firearm and protect public safety. An officer testified that although a third officer had taken defendant to the county jail, it was "very common," due to the ongoing COVID-19 pandemic, for the jail to only cite and release people in lieu of admitting them at the time. The officer was therefore concerned that defendant might "simply be[] released from the jail, come back, and either move the vehicle or get rid of the evidence." And although defendant was indeed cited and released in the jail parking lot at some point that evening, the officers could not recall whether they knew of his release when they called for the tow.

The two officers also testified that they were worried that even if defendant was admitted, he could have telephoned someone from jail and requested that they move the car. Moreover, officer testimony reflected their concern that passersby might access and use the firearm sitting in open view on the passenger seat, particularly because they did not know whether the Pontiac was locked or unlocked.

In addition, an officer testified that dispatch could have requested, "[a]t any given time," that the two officers remaining at the scene leave the Pontiac and respond to another, "more serious" incident. At the time, the minimum staff working a shift on the local police force was six. The officer testimony suggested that those circumstances made guarding the Pontiac while attempting to secure a warrant impracticable. For the foregoing reasons, the officers had the Pontiac towed without a warrant.

The officers waited for the tow truck for roughly 30 to 60 minutes and did not receive any calls from dispatch during that window. Moreover, one of the officers was able to accompany the tow truck to the evidence yard and process

the Pontiac there for another 30 to 45 minutes. Both officers testified that they carry cellphones on the job and know how to obtain telephonic warrants. And, in fact, one officer testified that, after 9:00 p.m. on the following day, he secured a warrant to search the Pontiac from an on-call judge.

At the conclusion of the hearing, the trial court denied defendant's motion to suppress. It ruled that the Pontiac's seizure was lawful "based on the exigency of destruction of evidence" and search incident to arrest.

B.  *The trial court erroneously concluded that exigent circumstances existed to support the officers' warrantless seizure of the Pontiac.*

On appeal, defendant argues that neither exigent circumstances, search incident to arrest, nor any other exception to the warrant requirement justified the police's seizure of the Pontiac, and therefore the trial court erroneously denied his motion. In addressing the legality of the warrantless seizure of the Pontiac, we remain cognizant that the state bears "the burden of proving that circumstances existing at the time were sufficient to satisfy any exception to the warrant requirement," *State v. Ramirez*, 305 Or App 195, 213, 468 P3d 1006 (2020), and that, on appeal, "we are bound by the facts found by the trial court if there is evidence in the record to support them," *State v. McCarthy*, 369 Or 129, 178, 501 P3d 478 (2021). However, "[w]hether those facts describe circumstances that justify a warrantless search," or as in this case, a warrantless seizure, "is a question of law." *State v. Ritz*, 291 Or App 660, 662, 422 P3d 397 (2018).

Article I, section 9, protects against unreasonable searches and seizures.[1] *McCarthy*, 369 Or at 141. "[A] seizure of property occurs when there is a significant interference with a person's possessory interests." *Id*. Generally, to pass constitutional muster, a seizure must be supported by both probable cause and a warrant. *Id*. Warrantless seizures are therefore "*per se* unreasonable unless they fall within one of the few specifically established and limited exceptions

---

[1]  Article I, section 9, guarantees "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure."

to the warrant requirement." *Id.* Among the exceptions are exigent circumstances and search incident to arrest. *State v. Mazzola*, 356 Or 804, 810-11, 345 P3d 424 (2015). To start, we conclude that the trial court erred in ruling that exigent circumstances justified the officers' seizure of the Pontiac. To justify a warrantless seizure, exigent circumstances must be accompanied by probable cause. *McCarthy*, 369 Or at 142. Because defendant concedes that the officers had probable cause, we focus our analysis on whether exigent circumstances existed at the time of the challenged seizure.[2] *See id.* at 177 (expressing that, where the fruits of a warrantless seizure are challenged through a motion to suppress, the state bears the burden of proving that exigent circumstances "actually existed at the time of the seizure").

Exigent circumstances are "emergency situations that require the police to act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *Id.* at 142 (internal quotation marks omitted). And to justify a warrantless seizure of a vehicle, there must be an "actual exigency" rather than "merely a theoretical one." *Id.*

1. *It was speculative that a warrantless seizure was needed to prevent the loss or destruction of evidence.*

Here, we conclude that the state fell short of establishing "actual" exigent circumstances. The officers' concern that someone, such as the defendant or the Pontiac's registered owner, might pick up and drive off with the Pontiac (along with the evidence contained within) did not give rise to an "actual exigency" requiring the officers to "act swiftly" to prevent the destruction of evidence. That is, the state failed to prove that there was an "actual risk" that the Pontiac would "be moved and that contraband and evidence

_____

[2] At oral argument, the state argued that the seizure occurred when officers called the tow, rather than when the Pontiac was actually towed, because that call constituted a "show of authority." *See State v. Juarez-Godinez*, 326 Or 1, 6-7, 942 P2d 772 (1997) (holding that a car is seized when officers "actually curtail[]" a defendant's "right to direct the car's movements," or, "at the very least, by causing defendant reasonably to believe that that right had been curtailed"). However, we need not decide whether the seizure occurred when the officers called the tow truck or when the Pontiac was actually towed because, as is made clear within our analysis, exigent circumstances did not justify the Pontiac's seizure at either point in time.

w[ould] be lost." *See id.* at 168 (eliminating the automobile "exigency" exception and, in doing so, suggesting that exigent circumstances do not exist "when there is no actual risk that a vehicle will be moved and that contraband or evidence will be lost").[3]

For one, the officers' concerns that a bystander, the registered car owner, someone that the defendant could telephone from jail, or defendant himself might meddle with the Pontiac were too theoretical and speculative to create exigent circumstances necessitating immediate intervention. *See id.* at 178 (affirming trial court's ruling that no exigent circumstances existed where the state "presented no evidence that anyone would move the automobile from the scene"). First, the record does not establish that at the time of the Pontiac's seizure, there were "identifiable persons" anywhere near the scene with a "motive to interfere" with the Pontiac or with the firearm on the front seat. *See State v. Nicholson*, 89 Or App 306, 311-12, 748 P2d 102, *rev den*, 305 Or 672 (1988) (explaining that Oregon courts have held that the possibility of interference with a car "constituted exigent circumstances *only when the state has proven that identifiable persons with a motive to interfere existed*" (emphasis added)). Second, the state presented no evidence that the registered owner had a "motive to interfere" with the evidence or even knew where the vehicle was located. Third, the state presented no evidence that, prior to the seizure, defendant actually contacted or even had the ability to contact someone to move the Pontiac or the stolen firearm. And fourth, the state offered no evidence that, at the time of the seizure, defendant posed an actual threat to the evidence housed in the Pontiac. An officer merely articulated a concern that, *if* released, defendant "*may* come back and *** take the vehicle." (Emphasis added.) Although it was "very likely" that the jail would not detain defendant, the state did not demonstrate that defendant posed an *imminent* threat

---

[3] In *McCarthy*, the Supreme Court eliminated the automobile exception to the warrant requirement of Article I, section 9, created in *State v. Brown*, 301 Or 268, 278, 721 P2d 1357 (1986). 369 Or at 132. The automobile exception had set out a *per se* "exigency" exception that permitted warrantless searches of vehicles so long as "(1) the car was mobile at the time it was stopped by the police; and (2) the police had probable cause to believe that the car contained contraband or crime evidence." *Id.* at 150.

to the evidence inside the Pontiac.[4] *See State v. Sanders*, 233 Or App 373, 378, 226 P3d 82 (2010), *rev den*, 350 Or 571 (2011) ("If the purpose of the warrantless search is to prevent destruction of evidence * * * , the state must show that destruction * * * was imminent.").

Moreover, the state's failure to prove that the officers could not reasonably have procured a warrant prior to seizing the Pontiac precludes an exigency determination. *McCarthy*, 369 Or at 177 (holding that to establish exigent circumstances, the state "must prove that it could not obtain a warrant through reasonable steps, which include utilizing available processes for electronic warrants"). In *McCarthy*, the Supreme Court affirmed the trial court's determination that exigent circumstances did not justify the warrantless search of a stopped vehicle. *Id.* at 178-79. The Supreme Court agreed with the trial court that, given the "ubiquity of cellphones, the statutory process for obtaining telephonic warrants, and the number of judges and judicial officers," it was unreasonable that "no one even considered the idea of calling a judge * * * to seek judicial authorization." *Id.*

The same reasoning applies here. The state failed to establish that, under the circumstances, the two officers who remained with the Pontiac could not reasonably have obtained a warrant while surveilling the car.[5] Instead, the

_____

[4] To be sure, defendant was released in the jail parking lot at some point in the evening. However, the record neither establishes when defendant was released relative to when the tow was called or when the Pontiac was actually towed, nor whether, if he had been released, the officers were aware of that fact at either point in time. And regardless of when defendant was freed, the record does not demonstrate that defendant posed an imminent threat to the evidence when the Pontiac was seized.

[5] The state argues that police would have seized the vehicle by "watching a vehicle while applying for a warrant, and prohibiting anyone from entering or removing the vehicle." Our case law makes clear that merely surveilling a vehicle while seeking a warrant does not constitute a seizure, and, where feasible, that is the constitutionally preferable route. *See, e.g.*, *State v. Walker*, 113 Or App 199, 203, 830 P2d 633, *rev den*, 314 Or 574 (1992) (suggesting, in ruling that there was no exigency justifying the warrantless search of a parked vehicle, that it would have been preferable for one officer to guard the vehicle while other officers obtained a warrant); *Nicholson*, 89 Or App at 311 (noting that "[a]ssigning [an officer] to watch the car while the officers obtained a warrant would have been the correct procedure"). To be sure, a seizure would have occurred once the officers prohibited people from entering or moving the vehicle. *See Juarez-Godinez*, 326 Or at 8 (explaining that curtailing a person's "right to direct" a vehicle's

record indicates that the officers carried cellphones and knew how to request telephonic warrants after hours. In fact, the following day, after 9:00 p.m., the officers obtained a warrant from an on-call judge to search the Pontiac. In addition, there is no indication that the two officers were so busy that procuring a warrant was impracticable. After all, at least one officer stayed with the Pontiac until the tow arrived and even accompanied the tow truck to the evidence yard.[6]

In arguing that we reach a different result, the state relies on *State v. Greene*, 285 Or 337, 591 P2d 1362 (1979), and *State v. Rodriguez-Ganegar,* 186 Or App 530, 63 P3d 1225, *rev den*, 335 Or 578 (2003), two cases in which Oregon appellate courts held that exigent circumstances existed. But those cases involved specific individuals who possessed the motive *and* ability to tamper with the evidence and were near the thing that was searched or seized without a warrant. *Greene*, 285 Or at 340, 344-45 (upholding the warrantless seizure of a car where there was a "distinct possibility" that the car owner, who was inside the house that the car was parked outside of, might "attempt either to drive the car away or remove something"); *Rodriguez-Ganegar*, 186 Or App at 539-40 (upholding the warrantless search of a motel room where police were confronted with a "working drug operation" and had "every reason to believe that, before a warrant could be obtained, the occupants of the room might *** , if cognizant that they had been discovered, attempt to destroy the contraband in their possession"). In contrast, the record here establishes no such distinct or imminent threat of a person meddling with the Pontiac.

---

movements constitutes a seizure); *State v. Smith*, 327 Or 366, 376-77, 963 P2d 642 (1998) (holding that the act of padlocking a storage unit constituted a seizure). However, exigent circumstances might have arisen at *that* point to justify the warrantless seizure of the vehicle.

[6] We acknowledge the officers' concern that they could have been dispatched to another incident "[a]t any given time," which could have required them to leave the Pontiac with a visible firearm on the front seat. And indeed, if they had been dispatched to another incident, the facts may have supported an exigency that justified a warrantless seizure of the Pontiac. However, we decide cases based on the facts that occurred, not on hypothetical situations, and the record here demonstrates that the risk of being dispatched to another incident was too speculative to establish an exigency that justified the warrantless seizure of the Pontiac.

2.  *It was speculative that a warrantless seizure was needed to protect public safety.*

We likewise reject any justification for the officers' seizure of the Pontiac under the exigent circumstances' public safety prong. The trial court acknowledged that the officers had articulated "public safety issues" involving the "firearm in obvious view to anyone who chose to walk by the vehicle." But, without more, such generalized and speculative public safety concerns do not create exigent circumstances. *See, e.g.*, *State v. Walker*, 113 Or App 199, 203, 830 P2d 633, *rev den*, 314 Or 574 (1992) (holding that exigent circumstances did not justify the warrantless seizure of a gun from a parked vehicle because there was no showing that there was "anyone else in the area with a motive to interfere in the situation" and an officer was "available to guard the vehicle"); *State v. Parras*, 110 Or App 200, 203, 822 P2d 151 (1991) (suggesting that a "generalized concern" that "someone" might interfere with a parked car does not constitute exigent circumstances). Here, the state failed to establish anything more than a speculative concern that an unidentified "somebody" could access and use the firearm. For example, an officer testified at the motion to suppress hearing that *if* the Pontiac was unlocked, "it'd be easy for *somebody* to walk by, open the car, and obtain that firearm," or, *if* it was locked, "to break the window, reach in, and obtain it." (Emphasis added.) In addition, two officers were available to surveil the Pontiac, which was parked in a residential neighborhood, at the time it was seized. In short, because the state failed to establish that exigent circumstances existed at the time of the Pontiac's seizure, the trial court erred in denying defendant's motion to suppress based on that rationale.[7]

---

[7] Although the state does not attempt to defend the trial court's ruling on the alternative basis of search incident to arrest, we note that we are also unpersuaded that the officers' seizure of the Pontiac was justified as incident to defendant's arrest. An arrestee's proximity, at the time of their arrest, to the item searched or seized incident to arrest bears heavily on the reasonableness of that warrantless search or seizure, and, here, the record does not indicate that defendant was arrested anywhere "in or near" the Pontiac. *See Walker*, 113 Or App at 204 (concluding that there was no valid search incident to arrest of the defendant's car where the defendant "was not in or near the car" at the time of arrest).

C.   *The evidence obtained from the unlawful seizure should have been suppressed under the exclusionary rule.*

Because we conclude that the Pontiac was unlawfully seized, we next must consider whether the evidence obtained after that unlawful seizure must be suppressed under Oregon's exclusionary rule. The exclusionary rule presumes that evidence secured after the violation of a defendant's Article I, section 9, rights was "tainted by the violation and must be suppressed." *State v. Sanchez*, 273 Or App 778, 784, 359 P3d 563 (2015). Specifically, when a defendant "challenges the admission of evidence obtained in a warranted search that is preceded by an illegality," as is the case here, we apply a "burden-shifting framework" adopted in *State v. Johnson*, 335 Or 511, 73 P3d 282 (2003). *State v. DeJong*, 368 Or 640, 642, 497 P3d 710 (2021). Under that framework, the defendant bears "the initial burden to establish a minimal factual nexus between the illegality and the challenged evidence," which requires that the defendant "show only that the evidence obtained is *connected* to some prior governmental misconduct." *Id.* at 642, 651 (internal quotation marks omitted; emphasis in original). If the defendant meets their burden, then the state must "establish that the challenged evidence was untainted by the illegality." *Id.* at 642.

We agree with defendant that he established the "minimal factual nexus" between the officers' unlawful seizure of the Pontiac and the challenged evidence, and we further conclude that the state failed to carry its burden to prove that the discovery of the evidence was "untainted by the illegality" because it did not develop a record on that issue. *See State v. Lambert*, 265 Or App 742, 747-49, 338 P3d 160 (2014) (concluding that, because the "record [wa]s silent" on the question of whether police would have inevitably discovered the challenged evidence, the state failed to carry its burden).

Indeed, the state does not advance an attenuation argument on appeal. Because the state did not meet its burden, we conclude that the trial court erred by not suppressing the evidence seized from the Pontiac.

D.   *The error in denying defendant's motion to suppress was
     not harmless as to the convictions for felon in possession
     of a firearm and identity theft, but it was harmless as to
     the conviction for burglary.*

Finally, we must address whether the trial court's
error in denying defendant's motion to suppress is harmless.
*State v. Bradley*, 329 Or App 736, 744, 542 P3d 56 (2023)
("[A]lthough no party on appeal addresses the issue, we
must address the question of harmlessness because we have
an independent obligation under the state constitution.").
We will affirm defendant's conviction if there was "little
likelihood" that the error affected the jury's verdict. *State v.
Davis,* 336 Or 19, 32, 77 P3d 1111 (2003).

Here, we cannot say that there was "little likeli-
hood" that the erroneously admitted evidence affected the
verdict as to the five counts of identity theft (Counts 4 to
8). After all, law enforcement's search of the unlawfully
seized Pontiac uncovered evidence central to the state's case
against defendant on the identity theft charges: the stolen
personal identifications. *See Sanchez*, 273 Or App at 787-88
(determining that the denial of a motion to suppress was not
harmless because the erroneously admitted evidence was
central to the state's case against the defendant).

The same is true for defendant's conviction for felon
in possession of a firearm (Count 3). Following the seizure
of the Pontiac, the officers seized and photographed the fire-
arm that provided the basis for defendant's conviction. That
photograph, a tainted fruit of the unlawful seizure, was
entered into evidence at trial. Because the photograph of the
seized firearm was "qualitatively different" from the other,
largely testimonial evidence supporting the felon in posses-
sion of a firearm conviction, we believe that it "likely would
have particularly drawn the attention of the jury," and we
therefore cannot say that its admission was not harmless.
*State v. Sells*, 339 Or App 299, 313, 568 P3d 1011 (2025)
(internal quotation marks omitted).

However, our ruling on defendant's first assignment
does not impact his burglary in the first degree conviction
(Count 1), also challenged on appeal, because the record

does not indicate that any evidence obtained following the officers' unlawful seizure of the Pontiac was likely to have influenced the jury's verdict on that count.

## III.   EYEWITNESS TESTIMONY

Defendant argues that under the framework set forth in *State v. Lawson/James*, 352 Or 724, 291 P3d 673 (2012), the trial court erred when it allowed two eyewitnesses to testify that the characteristics of the person that they had seen on the evening in question were "very consistent" with the photograph of defendant taken and shown to them by police.[8] The state argues that defendant failed to preserve his argument. Having reviewed the record, we agree with the state's argument and conclude that defendant failed to preserve the issue that he now raises on appeal.

On the relevant evening, two eyewitnesses separately observed a person near the time and place of defendant's arrest. Neither witness closely saw the person's facial features but noticed the person's clothing and general physical characteristics. After police apprehended defendant, officers took a photograph of defendant sitting in the patrol car's backseat and wearing a COVID-19 mask. On the evening of defendant's arrest, an officer showed the photograph to the two eyewitnesses to help determine whether the person that they each had seen might be defendant. Both witnesses identified the photograph as "being consistent" with the person that they had observed, although neither identified defendant's face.

Before trial, defendant filed a motion to exclude eyewitness identification testimony from the two witnesses. Applying the framework set forth in *Lawson/James* and noting that the photograph of the masked defendant constituted "sort of a half show-up," the trial court granted defendant's motion. The court signed a proposed order, which defendant had prepared, and ruled:

> "The witnesses may testify as to their observations of the physical characteristics and clothing of the person whom they saw and may testify that those characteristics

---

[8] In *Lawson/James*, the Supreme Court revised the test for determining the admissibility of eyewitness identification evidence. 352 Or at 761-63.

are consistent with the physical characteristics and clothing of the individual in the photograph presented by [the] police officer[.]"

However, the court prohibited the witnesses from identifying defendant—in other words, from testifying that "the guy [they] saw is the guy in the picture."

At trial, the state called one of the eyewitnesses to the stand and asked "how certain" he was that the physical characteristics and the clothing depicted in defendant's photograph were "consistent" with the person that he had observed on the relevant evening. Defendant objected, arguing that testifying to the level of certainty that a witness's observations were "consistent" with the photograph was "essentially akin" to testifying to the level of certainty that a witness had identified a person as defendant, the latter of which the trial court had prohibited.

In response, the trial court sustained defendant's objection but specified that the witnesses could testify to the "level of similarity" or consistency—such as "somewhat consistent, very consistent, [or] a little bit consistent"— between their observations of the person's physical characteristics and clothing and those in defendant's photograph. Defendant made no objection to that ruling and declined the court's offer to further "clarify or supplement the record." In compliance with the court's ruling, the state then elicited testimony from both eyewitnesses that the physical characteristics and clothing of the person in the photograph and the person that they had observed were "very consistent" with one another. Defendant did not object to either line of questioning.

On appeal, defendant argues that the two witness' "very consistent" testimony is "tantamount" to the eyewitness identification testimony that the court had excluded in its pretrial order, and therefore the court erred in allowing that testimony at trial. We conclude that defendant failed to preserve his argument. In general, "a party must provide the trial court with an explanation of his or her objection that is specific enough to ensure that the court can identify its alleged error with enough clarity to permit it to consider and correct the error immediately, if correction

is warranted." *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000). Moreover, the Supreme Court has indicated that a helpful "gauge" for preservation questions is to ask: "Would the trial court be taken aback to find itself reversed *on this issue, for this reason*?" *State v. Skotland*, 372 Or 319, 329, 549 P3d 534 (2024) (emphasis in original). If the answer is yes, the issue is likely unpreserved. *Id*. at 329-30.

It is clear from the exchange between the parties and the court that defendant was concerned about the witnesses testifying to their level of certainty that defendant's photograph was consistent with their observations of the person that they had seen on the evening in question. The trial court reiterated that the state could not offer positive identifications and ruled that the state could not elicit testimony akin to "I'm a hundred percent positive [the photograph is] absolutely consistent with" the person that the witnesses had seen, because that would be "tantamount to saying, 'He's the guy.'" The trial court then indicated that the witnesses could describe the level of consistency between the photograph and their memory; in other words, to "give general comment. It was somewhat consistent, very consistent, a little bit consistent." That ruling tracked with the trial court's earlier observation that "it would be going too far" to prohibit the witnesses from testifying about the "level of similarities" that they had observed. Defendant did not object to the trial court's ruling. He also did not object to the subsequent witness testimony that the physical characteristics and clothing of the person in the photograph were "very consistent" with the person that the witnesses had seen.

Because the trial court appears to have ruled in defendant's favor on his objection, "reversal would [ ] come out of the blue; objectively, the trial court had been given no reason to think that its ruling had been controversial, contested, or exceeded." *Id*. Defendant did not give the trial court the first opportunity to rule on this issue, and it is therefore unpreserved for appellate review. *See State v. Ames*, 298 Or App 227, 232, 445 P3d 928 (2019) (explaining that providing the trial court "the opportunity to fully consider and rule in the first instance" is among the policies served by the preservation requirement).

Defendant failed to preserve his argument, so we may review only for plain error. *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991); ORAP 5.45(1). Defendant does not request plain-error review, and "we ordinarily will not proceed to the question of plain error unless an appellant has explicitly asked us to do so." *State v. Ardizzone*, 270 Or App 666, 673, 349 P3d 597, *rev den*, 358 Or 145 (2015). Here, we decline to engage in plain error review, especially because the record indicates that the parties and the trial court understood the court to have ruled in defendant's favor on his objection.[9]

Convictions on Counts 3 to 8 reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[9] In any event, we note that, on plain-error review, parties advancing a "tantamount" argument akin to defendant's will face an uphill battle. Witness statements challenged on the grounds that they are "tantamount" to some category of excludable evidence will not warrant correction on plain-error review unless they are *unambiguously* "tantamount" to the relevant category of impermissible evidence. *See, e.g.*, *State v. E. J. R.*, 341 Or App 488, 492-95, 576 P3d 1051 (2025) (declining, on plain-error review, to correct witness testimony that the appellant argued was "tantamount" to impermissible vouching because the challenged statements were "not unambiguously vouching statements").